### DYSART v. UNITED STATES.[*]

(Circuit Court of Appeals, Fifth Circuit. March 11, 1925. Rehearing Denied April 6, 1925.)

No. 4294.

**1. Post office ⚫31—"Obscene, lewd, or lascivious matter" defined.**

Matter is "obscene, lewd, or lascivious," within Criminal Code, § 211, as amended by Act March 4, 1911, § 2 (Comp. St. § 10381), if it is offensive to common sense of decency and modesty of community, and tends to suggest or arouse sexual desires or thoughts in minds of those who may be depraved or corrupted thereby.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Obscene—Obscenity.]

**2. Post office ⚫50—For court in first instance, and then for jury, to determine whether matter is obscene.**

It is for court to determine, in first instance whether matter alleged to be nonmailable as obscene, within Criminal Code, § 211, as amended by Act March 4, 1911, § 2 (Comp. St. § 10381), is capable of having such tendency, and, if court finds that it has such capacity, it is then for jury to determine whether it has in fact such tendency.

**3. Post office ⚫31—Advertisement of maternity home is obscene, if it implants lewd or lascivious thoughts in minds of persons to whose notice it is directly brought.**

Though mails may be used for making known existence and merits of maternity institution, an advertisement of such institution is nonmailable, under Criminal Code, § 211, as amended by Act March 4, 1911, § 2 (Comp. St. § 10381), if it is so devised as to implant lewd or lascivious thoughts in minds of those to whose notice it is directly brought.

**4. Post office ⚫50—Whether advertisement of maternity institution for unmarried pregnant women was obscene held for jury.**

Whether advertisement of maternity institution for unmarried pregnant women, where they could conceal results of their missteps, was nonmailable, under Criminal Code, § 211, as amended by Act March 4, 1911, § 2 (Comp. St. § 10381), *held* question for jury.

**5. Post office ⚫50—Evidence that mailing of alleged obscene matter was under accused's direction held to present issue for jury.**

Evidence that mailing of alleged obscene matter in violation of Criminal Code, § 211, as amended by Act March 4, 1911, § 2 (Comp. St. § 10381), was under accused's direction, *held* to present issue for jury.

**6. Criminal law ⚫1055—Argument of government's counsel no ground for reversal, in absence of exception to court's ruling thereon.**

Statements by government's counsel in arguing to jury are no ground for reversal, in absence of exception to court's ruling thereon.

In Error to the District Court of the United States for the Western District of Texas; W. R. Smith, Judge.

John Carlton Dysart was convicted of having knowingly deposited and caused to be deposited in post office for mailing lewd and lascivious matter, and he brings error. Affirmed.

John F. Weeks and J. M. Nealon, both of El Paso, Tex. (Joseph McGill, of El Paso, Tex., on the brief), for plaintiff in error.

N. J. Morrison, Asst. U. S. Atty., and H. R. Gamble, Sp. Asst. U. S. Atty., both of

*Certiorari granted 45 S. Ct. 641, 69 L. Ed. —.

El Paso, Tex. (John D. Hartman, U. S. Atty., of El Paso, Tex., on the brief), for the United States.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. The plaintiff in error was convicted under all of the 11 counts of an indictment which charged that he knowingly deposited and caused to be deposited in the post office at El Paso, Tex., for mailing, conveyance, and delivery through the United States mails, a letter and printed card inclosed in an envelope, which letter and card were copied in the first count, and were alleged to be obscene, lewd, and lascivious. Each of the counts set out an address and direction of an envelope containing said letter and card; ten of the counts alleging that the envelope was addressed and directed to an unmarried female, named in said counts, respectively. The eleventh count alleged that envelopes containing said letter and printed card were addressed and directed to the several females therein respectively named. Said card contained a picture of a building, called "the Queen Anne Home," the street location thereof, and the following: "This institution is specially a private retreat for unmarried pregnant women, who prefer to be away from home during pregnancy and confinement, to preserve individual character or family reputation." The letter contained a caption which set out the same picture, statement of location, and the following: "Take taxi to the corner of Piedras and Van Buren streets, or call phone East 642, and we will call for you." Below the caption were the words "Dear Doctor." The body of the letter contained, in addition to other matter, the following:

"Realizing the need of those who, having made a misstep, find it necessary to leave home at this critical period, we have established our home for their protection and care until the time when they may return to their homes and friends, free from the burden of their mistake, to become useful members of society. We find homes for infants by adoption when desired, or provide board for them at reasonable rates. * * * We accept only such persons as are recommended by reputable physicians; therefore our patients come from the best families, and do not run the risk of having to meet or associate with objectionable characters."

At the end of the letter were the name of the accused, the words "Resident Physician," and two telephone numbers. By a so-called motion to quash the indictment, and by a motion in arrest of judgment, the accused questioned the sufficiency of the indictment on the grounds that no count thereof alleges an offense against the laws of the United States, and that the alleged letter and card are not in contents or meaning, directly or indirectly, obscene, lewd, or lascivious, and do not constitute nonmailable matter. At the conclusion of the evidence the defendant moved the court to instruct a verdict of not guilty, and excepted to the court's refusal to do so.

The indictment is based upon section 211 of the Criminal Code, as amended in 1911 (Comp. Stat. § 10381). That section contains the following: "Every obscene, lewd, or lascivious, and every filthy book, pamphlet, picture, paper, letter, writing, print, or other publication of an indecent character, * * * is hereby declared to be nonmailable. * * * Whoever shall knowingly deposit, or cause to be deposited for mailing or delivery, anything declared by this section to be nonmailable, * * * shall be fined not more than five thousand dollars, or imprisoned not more than five years, or both."

[1, 2] Matter is obscene, lewd, or lascivious, within the meaning of the quoted statute, if it is offensive to the common sense of decency and modesty of the community, and tends to suggest or arouse sexual desires or thoughts in the minds of those who by means thereof may be depraved or corrupted in that regard. Rosen v. United States, 161 U. S. 29, 16 S. Ct. 434, 480, 40 L. Ed. 606; Swearingen v. United States, 161 U. S. 446, 16 S. Ct. 562, 40 L. Ed..765; Dunlop v. United States, 165 U. S. 486, 17 S. Ct. 375, 41 L. Ed. 799; Magon v. United States, 248 F. 201, 160 C. C. A. 279; Knowles v. United States, 170 F. 409, 95 C. C. A. 579; 31 Cyc. 1003. It is for the court to determine in the first instance whether the matter in question is capable of having such a tendency, and, if the court finds that it has such capacity, for the jury to determine whether it does or does not in fact have such tendency. Rosen v. United States, supra; Magon v. United States, supra. The vicious tendency of a letter or publication in question may be the result of innuendo or suggestion, of its being so devised as to have capacity to give rise to illicit sexual desires or thoughts.

[3] In behalf of the accused it was contended that the charged advertising of his maternity or lying-in institution was incapable of having such a tendency. It is not

doubted that it is permissible to use the mails in making known the existence and claimed merits of such an institution. But an advertisement of such an institution is nonmailable if it is so devised as to serve the purpose of implanting lewd or lascivious thoughts in the minds of those to whose notice it is directly brought.

[4] We think that a denial of the power or influence of suggestion would be involved in affirming that statements to the effect that a named institution is a private retreat for unmarried pregnant women coming from the best families, and affords to such females a convenient means of concealing the results of their missteps, is incapable of giving rise to sexual thoughts or desires in the minds of unmarried females to whose notice such statements are brought. Commendation of existing facilities for avoiding possible unpleasant social consequences of conduct in pursuance of illicit sexual desires may be the means of covertly suggesting such desires to those whose actions are largely the result of social influences and restraints. The method adopted to bring to the notice of unmarried females an institution described as "specially a private retreat for unmarried pregnant women" may be inconsistent with customary standards of decency, though the use of indecent or obscene language is avoided. To say the least, we are of opinion that reasonable men might differ in passing on the question whether the above-mentioned letter and card were or were not obscene, lewd, and lascivious, when used in the manner alleged, and that the court did not err in ruling that the indictment was not subject to objection on either of the grounds set up.

[5] Evidence adduced tended to prove the material allegations of each count of the indictment. It was contended that the evidence was insufficient in the matter of the mailing of the envelopes containing said letter and card, and addressed as alleged. There was evidence to support findings that such envelopes were mailed by a female stenographer, who was employed by the accused, and who became the wife of the accused a few days after the indictment was returned, and that said stenographer acted at the instance of the accused in addressing and mailing the alleged nonmailable matter. The court did not err in refusing to instruct the jury to find a verdict of not guilty.

[6] Statements made by counsel for the government in his argument to the jury are complained of. No ruling of the court was invoked as to the part of that argument which is complained of in this court. That conduct of counsel is not a ground of reversal, in the absence of an exception to action of the court in regard thereto. The record shows no reversible error.

The judgment is affirmed.