## LEVINSON v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. May 4, 1925.)

No. 4309.

**1. Post office ⟷48(4)—Allegation that defendant expected personal profit unnecessary to sufficiency of indictment charging use of mails to defraud.**

Allegation that defendant expected to obtain some benefit from carrying out alleged fraudulent scheme is not essential to indictment, under Criminal Code, § 215 (Comp. St. § 10385), charging unlawful use of mails in furtherance of scheme to defraud.

**2. Post office ⟷48(8)—Indictment charging use of mails with intent to defraud held not at fatal variance with proof in matter of allegation of persons intended to be defrauded.**

Indictment, under Criminal Code, § 215 (Comp. St. § 10385), for unlawfully using mails with intent to defraud, alleging intent to defraud two specific firms, and "other persons,

firms, and corporations * * * whose names were unknown to the grand jury," held not at fatal variance with proof.

**3. Post office ⟷49—Evidence held to sustain finding defendant had mailed or caused to be mailed letters involved in furtherance of scheme to defraud.**

In prosecution, under Criminal Code, § 215 (Comp. St. § 10385), for use of mails in furtherance of scheme to defraud, evidence held to justify finding that defendant had placed or caused to be placed in post office letters involved, notwithstanding defendant denied writing or mailing such letters, and no one testified to having seen him do so, and notwithstanding envelopes in which letters were received were not preserved or put in evidence.

**4. Post office ⟷49—Evidence held to sustain conviction for use of mails in furtherance of scheme to defraud.**

Evidence that person in charge of corporate affairs had furnished credit-reporting companies with false financial statements for purpose of obtaining unwarranted ratings, with intent to defraud persons dealing with corporation in reliance on such ratings, held sufficient to sustain conviction for fraudulent use of mails in furtherance of scheme to defraud, under Criminal Code, § 215 (Comp. St. § 10385).

**5. Criminal law ⟷633(1)—Refusal to require government witnesses to remain in court, subject to recall after cross-examination by defendant, not error.**

Refusal to require government witnesses to remain in court, subject to recall after they had testified for government, and after defendant had availed himself of opportunity of full cross-examination, held not error.

In Error to the District Court of the United States for the Southern District of Ohio; Smith Hickenlooper, Judge.

W. William Levinson was convicted of unlawfully using the United States mails in furtherance of a scheme to defraud, and he brings error. Affirmed.

R. T. Dickerson and Dudley C. Outcalt, both of Cincinnati, Ohio (J. W. Heintzman, of Cincinnati, Ohio, on the brief), for plaintiff in error.

Robert A. Kramer, Asst. U. S. Atty., of Cincinnati, Ohio (Benson W. Hough, U. S. Atty., of Columbus, Ohio, on the brief), for the United States.

Before DENISON and MOORMAN, Circuit Judges, and WESTENHAVER, District Judge.

PER CURIAM. Levinson, defendant below, was indicted under section 215 of the Criminal Code (Comp. St. § 10385) on seven counts, each of which charged him with unlawfully using the United States mails in furtherance of a scheme to defraud. Upon

the trial five of the counts were dismissed, but upon counts 2 and 6 verdicts of guilty and judgments of conviction were rendered.

The two counts on which defendant was convicted are identical in their averments as to the scheme devised, the correlative element of the offense in count 2 being, as charged, the mailing of a letter of August 1, 1923, to the Florence Table & Manufacturing Company, of Memphis, Tenn., and in count 6 the mailing of a letter of August 25, 1923, to the Newark Ohio Furniture Company, Newark, Ohio. The scheme, as alleged in substance, was that defendant, being the manager of the Moorman Furniture Company, which was engaged in the wholesaling and retailing of furniture, carpets, etc., at Cincinnati, made or caused to be made and delivered to the Bradstreet Company in count 2, and to R. G. Dun & Co. in count 6, a false statement of the assets and liabilities of the Moorman Furniture Company, as of May 31, 1923, for the purpose and with the intention of fraudulently obtaining merchandise, property, and credit from designated clients and customers of the rating companies, and other persons, firms, and corporations of the same class, whose names were unknown to the grand jury. The contents of the statement, its falsity, and the intent thereby to defraud were set out in each of the counts, with the additional averments that defendant mailed or caused to be mailed the letters referred to for the purpose of executing the previously devised scheme to defraud.

Defendant organized the Moorman Furniture Company in the early part of 1922, and exercised general supervision and control over its affairs throughout its brief existence. His wife subscribed for and owned the greater part of its capital stock. Other incorporators and stockholders, with one exception, subscribed for only such shares as were necessary to qualify as directors. Joseph Moorman agreed to take more than the requisite amount, with the understanding that he was not to pay for it, and the stock certificate issued to him was held by the defendant. Moorman was the nominal president of the company, but was in fact an employé drawing a relatively small salary, with no authority or control over the business. His son, Henry Moorman, kept the books, during the time he could spare from his regular employment elsewhere.

The financial statement issued in furtherance of the scheme to defraud, as claimed by the government, was prepared by defendant and delivered to the rating companies July 20, 1923. It purported to show the financial condition of the company as of May 31, 1923. The letter to the Florence Table & Manufacturing Company, was dated August 1st, at "Cincinnati, Ohio," and was evidently written in response to a request to pay for an order before shipment. It referred the manufacturing company to R. G. Dun & Co. and Bradstreet & Co. as to the financial responsibility of the Moorman Furniture Company. The letter of August 25th, presumably written at "Cincinnati, Ohio," ordered from the Newark Ohio Furniture Company, for prompt shipment, a bill of goods of the approximate value of $150, and referred the Newark Company to R. G. Dun & Co. as to the financial standing of the Moorman Furniture Company. These letters were transmitted through the mails to the companies to which they were written.

[1] Consideration will be given in this opinion to such of the many assignments of error as are thought pertinent to a decision of the case. The first relates to the sufficiency of the indictment. It is contended that counts 2 and 6 are defective, because of the absence therein of averments to the effect that defendant expected to obtain some benefit through the carrying out of the alleged fraudulent scheme. Such an allegation, in our opinion, was not indispensable to the validity of the charges. United States v. Young, 232 U. S. 155, 34 S. Ct. 303, 58 L. Ed. 548. But whether it was or was not it is necessarily implied in the facts alleged.

[2] The claim of fatal variance between the indictment and the proof rests on a line of cases of which Larkin v. United States, 107 F. 697, 46 C. C. A. 588, is an extreme example, wherein the indictments were held bad because of language importing an intention to defraud individuals whose names were known or ascertainable, but were not given. They are inapplicable to a case like this, where it is averred that the scheme was to defraud specific individuals and others of a class described as particularly as possible. As to the unnamed persons the case is controlled by Durland v. United States, 161 U. S. 306, 16 S. Ct. 508, 40 L. Ed. 709, and Finnegan v. United States (C. C. A. 6), 231 F. 561, 145 C. C. A. 447. If, however, it were otherwise, the contention could not prevail, because the purpose of definiteness was adequately served in the naming of the persons to whom defendant was charged with mailing the letters in furtherance of the scheme.

[3] The envelopes in which the letters were received were not preserved or put in.

evidence. No one testified to seeing Levinson mail the letters, and he denied writing or mailing either of them. Neither of them bears his signature. From this seeming deficiency in the record it is argued that the venue was not shown, that it was not inferable from the proven facts, and that the finding of its existence as a fact was an inference upon other inferences, which, it is contended, does not meet the requirement that it be proved like any other essential element of the offense. Underwood v. United States (C. C. A. 6) 267 F. 412, is referred to as sustaining the contention. We do not so regard it, for in that case there was nothing to show where the letter was mailed, and what the court held was that it would not presume, from the receipt of the letter alone, that it was mailed at the defendant's usual place of residence.

The evidence for the government in this case tended to show that defendant was dominant in the affairs of the company, carried on all of its correspondence, and exercised a control of its business that precluded others from purchasing goods and contracting indebtedness. Furthermore, the letters in question were written on the stationery of the company, seemingly from its place of business in "Cincinnati, Ohio." It was there that it conducted its business, and at that point written orders and letters with respect to them were in the regular and usual course of business mailed. One of the letters was a response to a request addressed to the furniture company at Cincinnati only two days before. These facts, with others in the record, were sufficient to justify the finding that defendant placed the letters or caused them to be placed in the post office at Cincinnati, where such letters were ordinarily mailed.

[4] As to the evidence upon which the government relied to establish the scheme to defraud, it is, we think, sufficient to say that there was proof of defendant's making a false financial statement with intent to defraud those to whom the two letters were written, and others who might be induced by reason of the false rating so acquired to extend credit to his company. That the government depended on the witness Egan alone to show the falsity of the statement is not important. The testimony of that witness was based on the records and books of the company. It shows a wide discrepancy between the actual financial status of the company as of May 31st and that reported by defendant to the rating companies, and it does not appear, as said by defendant, that, had the witness appraised stock values at retail prices of 50 per cent. above cost instead of 25 per cent., the result of his calculation would have been in substantial accord with the defendant's financial statement. Computations upon either basis, combined with either method used by the witness—i. e., sales and purchases shown on the books from the beginning of the business to May 31st, or figuring from the inventory taken prior to the bankruptcy sale back to that date—show results wholly inconsistent with substantial accuracy in the statement issued by defendant. There was, in our opinion, abundant evidence to sustain the verdict.

[5] Egan's testimony as to the assets and liabilities of the company on May 31st, as reflected by the inventory at the time of the bankruptcy sale, after taking into account the sales and purchases between that date and May 31st, was manifestly competent as an allowable method of ascertaining as nearly as possible the fact in issue. Other exceptions to rulings in admitting and rejecting testimony are too trivial for discussion. The same view may be expressed as to the exception to the court's refusal to order the government's witnesses to remain in court subject to recall after they had testified for the government. Defendant was given and availed himself of the opportunity of full cross-examination. Subsequent developments disclosed no reasons for extending it.

The exception to the charge, in so far as it excluded the necessity of the jury's believing that defendant was to receive or did personally receive some benefit by reason of the fraud, was not well taken, since that part of the charge as qualified correctly stated the law. United States v. Young, supra. The court's comment on the failure of the defendant, when upon the stand, to testify as to certain aspects of the alleged scheme to defraud was justified under Caminetti v. United States, 242 U. S. 470, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168. The charge is not open to the objection of undue emphasis on certain features of the evidence or failure to cover others. It was a fair exposition of the law applicable to the case.

Judgment affirmed.