## BAKER v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. January 8, 1926.)

No. 4423.

**1. Grand jury ⊛9—Where jurors summoned generally are by direction of court placed on grand jury, it is lawfully constituted.**

Judicial Code, § 284 (Comp. St. § 1261), does not require grand jurors to be summoned as such; so grand jury is lawfully constituted, where jurors are summoned generally for service for term, and from those summoned part are by direction of court selected and sworn for grand jury service.

**2. Indictment and information ⊛125(43)—Scheme, in furtherance of which mail was used, charged to be to defraud insurance order and not also policy holders.**

Indictment for use of mail in furtherance of scheme to defraud *held* not duplicitous, as charging scheme to defraud, not only insurance order, but its members; it merely showing, as incident to or part of scheme to defraud the order, that certain members were induced by false representations to surrender their policies.

**3. Post office ⊛49—Letters held shown by evidence, on prosecution for illegal use, to have been received through mails.**

Though envelopes were not preserved, that letters were received through mail *held* sufficiently shown by evidence on prosecution for using mails in furtherance of scheme to defraud.

**4. Criminal law ⊛1169(11)—Admission of evidence, of prior scheme, if incompetent, held harmless.**

Assuming evidence of prior similar scheme, devised and recently executed by defendants, to have been incompetent, its admission was harmless, in view of its final exclusion and of other proof.

**5. Post office ⊛51—Sentence on several counts for use of mails to defraud held not excessive punishment.**

Where defendant is convicted on four counts for use of mails in furtherance of

scheme to defraud, the sentences run concurrently, and the fines are cumulative, with the result that he receives a sentence of three years in the penitentiary and is adjudged to pay fines amounting to $4,000, *held*, there is no excessive punishment.

In Error to the District Court of the United States for the Western District of Tennessee; J. W. Ross, Judge.

Criminal prosecutions by the United States against Charles W. Baker. Judgment of conviction, and defendant brings error. Affirmed.

Charles A. Stainback, of Somerville, Tenn., and D. B. Puryear, of Memphis, Tenn., for plaintiff in error.

W. H. Fisher, Asst. U. S. Atty., of Memphis, Tenn. (S. E. Murray, U. S. Atty., and A. A. Hornsby, Asst. U. S. Atty., both of Memphis, Tenn., on the brief), for the United States.

Before DONAHUE, MOORMAN, and KNAPPEN, Circuit Judges.

MOORMAN, Circuit Judge. Charles W. Baker and A. S. Waller, commander and clerk, respectively, of the local camp of the Woodmen of the World at Rossville, Tenn., were indicted on six counts, charged in each of them with use of the mails in furtherance of a scheme to defraud an organization known as the Sovereign Camp of the Woodment of the World. Waller was acquitted, but Baker was convicted on four counts. He insists here that the proceeding was void, because the indictment was not returned by a lawfully constituted grand jury.

[1] The question was raised below by plea in abatement filed immediately after the return of the indictment and before any other plea had been entered. The grand jury was summoned under an order directing the drawing of the names of 71 persons from the jury box for jury service at the May, 1924, term, without designating that any of them should be drawn as grand jurors. From those summoned there were selected and sworn under direction of the court, as the clerk testified, the first 21 for grand jury service. Defendant says that, as it was not stated in the order that the 71 persons or any number of them were to be summoned as grand jurors, there could not be a legal grand jury constituted of those persons. Section 284 of the Judicial Code (Comp. St. § 1261), relied on by defendant, provides:

"No grand jury shall be summoned to attend any district court unless the judge thereof, in his own discretion or upon a notification by the district attorney that such jury will be needed, orders a venire to issue therefor," etc. The purpose of this, as decided in Breese v. United States, 203 F. 824, 122 C. C. A. 142, was economic, and not that grand jurors should be summoned as such. Besides, the question is settled in this jurisdiction by Abramson et al. v. United States (C. C. A.) 2 F. (2d) 595, where it was ruled that there was a substantial compliance with the requirements of the statutes if qualified persons whose names had been drawn from the box and duly summoned by the marshal for jury service were under orders of the court placed on the grand jury list. We see no reason to change this ruling.

[2] Nor is the indictment bad for duplicity. While it is stated that the scheme was intended to defraud, not only the Sovereign Camp, but Robinson, Mahan, Gurkin, and various others who were members of and interested in the Woodmen, it is not charged in terms that the three individuals named were to be defrauded by means of the surrender of their policies, although such not improbable result might be inferable. The order might be defrauded, whether or not the individuals named were also cheated in their individual capacities. The gist of the offense was not the devising of the scheme to defraud, but the causing of a letter to be mailed in furtherance of it. The scheme, as set out in the first count, was to defraud the Sovereign Camp of the Woodmen of the World. In perfecting it, the indictment shows that certain members of the organization were induced by false representations to surrender their policies. But that was merely incidental to or a part of the scheme to defraud the order, in furtherance of which the mails were used. Hence there was in fact but one offense charged in each count, and that the one upon which defendant was tried.

[3] Two of the counts charged defendant with causing to be mailed certain papers at Rossville, Tenn., addressed to the Woodmen of the World at Omaha, Neb., and the other two related to the receipt of papers containing checks in payment of total disability benefits, all in furtherance of the fraudulent scheme. It is said that it was not shown that the letters were received through the mail. The envelopes were not preserved, but the

letters were identified by a receiving stamp, and Lackey, an employee in the general office of the Woodmen at Omaha, testified that they came through the mails, although he seemed to base the statement on the fact that the head office received papers from several thousand subordinate lodges, and practically all of such papers came by mail. When interrogated by the court, however, he said, speaking particularly as to whether he knew the papers in question were so received, "I do by reason of this stamp (referring to a private stamp put on the file by witness)." This testimony, with that showing who prepared the papers, with whom they were left for forwarding, who received the checks in payment of the disability benefits, cashed them, etc., and even defendant's own testimony, leaves no room for doubt as to the mailing of the papers by defendant and his receipt of the checks, as respectively alleged in the four counts on which he was convicted.

[4] Complaint is made of the admission of some of the evidence. We have given consideration to the various questions discussed under this assignment, and conclude that there was no prejudicial error committed. The testimony as to transactions between defendants and the order, whereby they collected for themselves permanent disability benefits, is not subject, we think, to the objection of incompetency, because it tended to prove an offense committed more than three years before the finding of any indictment. The scheme with which defendants were charged was unique; it required ingenuity. A similar scheme, devised and successfully executed by defendants immediately before this one was conceived, would seem to be admissible in evidence, as tending to show they devised this scheme and what its purpose was. But, if we assume that the testimony was incompetent, the fact remains that the court finally excluded it, and directed the jury not to consider it, in which circumstances it is not believed to have been prejudicial, in view of the overwhelming proof of the purposes of the scheme otherwise adduced.

[5] The final assignment of excessive punishment requires no discussion. Defendant was convicted on four counts. The prison sentences run concurrently; the fines are cumulative. The result is that he received a sentence of three years in the penitentiary and was adjudged to pay fines amounting to $4,000. This is not excessive punishment.

Judgment affirmed.