## KROTKIEWICZ v. UNITED STATES.

Circuit Court of Appeals, Sixth Circuit.
May 16, 1927.

No. 4685.

**1. Post office �köä48(4¾)—Count in indictment more fully describing scheme to defraud in its execution than its devising held sufficiently to charge mailing of letter (Penal Code, § 215 [Comp. St. § 10385]).**

Count in indictment for using mails to defraud, charging defendant with devising scheme to defraud in violation of Penal Code, § 215 (Comp. St. § 10385), in furtherance whereof he made false financial statement and sent it through the mails, by means of which he defrauded the F. Company, *held* sufficiently to charge mailing of the letter pursuant to scheme more fully described in reciting its execution.

**2. Post office ⊛48(4¼)—Indictment for using mails to defraud, charging making false financial statement, held sufficiently to charge defendant knew statement was fraudulent (Penal Code, § 215 [Comp. St. § 10385]).**

In indictment under Penal Code, § 215 (Comp. St. § 10385), for using mails to defraud, count alleging the scheme consisted in making false financial statement of assets, liabilities, and net worth *held* sufficiently to charge defendant knew falsity of the statement.

**3. Indictment and information ⊛71—Indictment for using mails to defraud held sufficient, where it would enable defendant to defend and to plead judgment as bar to subsequent prosecution.**

Indictment which informed defendant he was charged with devising scheme to defraud the F. and A. Companies, and with placing false financial statement in mails for that purpose, *held* sufficient, since it would enable him to present defense and to plead the judgment as bar to subsequent prosecution for the same offense.

**4. Post office ⊛50—Evidence held for jury under indictment charging making of false financial statement and intent to procure goods thereon.**

Evidence that store president made statement showing real estate assets of $41,100, though real estate was sold on same day for $20,000, that purchases increased while sales declined, and that on adjudication of bankruptcy assets were less than represented in statement, *held* for jury, under indictment charging making false statement and intent to procure goods thereon.

**5. Post office ⊛49(11)—Evidence held to sustain finding defendant mailed or caused to be mailed financial statements involved in scheme to defraud (Penal Code, § 215 [Comp. St. § 10385]).**

In prosecution under Penal Code, § 215 (Comp. St. § 10385), for using mails in furtherance of scheme to defraud, evidence *held* to sustain finding that defendant placed or caused to be placed in post office financial statements involved, which were signed by him and received by addressees.

**6. Criminal law ⊛406(4)—Bankruptcy schedules, signed by corporation president, held admissible as admissions in prosecution for using mails to defraud (Penal Code, § 215 [Comp. St. § 10385]).**

In prosecution of president and chief stockholder of department store for using mails to defraud, in violation of Penal Code, § 215 (Comp. St. § 10385), by scheme involving false financial statement, bankruptcy shedules signed by him *held* admissible as his admissions, where the adjudication was four months after the statement.

**7. Criminal law ⊛787(2)—Instructing jury to consider defendant's failure to explain incriminating evidence held proper, where he testified as to good character.**

In prosecution for using mails to defraud, charge that jury might consider defendant's failure to explain incriminating evidence *held* proper, where defendant testified as to age, residence, and business experience; such testimony being in effect proof of good character and material to defense.

**8. Criminal law ⊛787(1)—Constitutional immunity from comment on failure to testify does not extend to voluntary testimony of accused (Const. Amend. 5; Comp. St. § 1465).**

Defendant, who voluntarily testifies on material part of the merits of the case or subject-matter of offense charged against him, waives privilege of immunity from comment which, did he not testify, he would be entitled to under Const. Amend. 5, and Act March 16, 1878 (Comp. St. § 1465).

**9. Criminal law ⊛381—Defendant's testimony of age, business experience, and prior freedom from litigation held material to prosecution, as proof of good character.**

In prosecution for using mails to defraud, defendant's testimony of age, business experience, and former freedom from litigation was material to his defense, as proof of good character.

**10. Post office ⊛50—Instructions in prosecution for using mails in furtherance of scheme to defraud held proper, where they impressed jury that intent was gist of offense (Penal Code, § 215 [Comp. St. § 10385]).**

In prosecution for using mails in furtherance of scheme to defraud, in violation of Penal Code, § 215 (Comp. St. § 10385), instructions *held* proper on question of intent, where they impressed jury that intent was gist of the offense and must be proven beyond a reasonable doubt.

**11. Criminal law ⊛640—Permitting attorney interested in bankruptcy proceedings to sit with and advise district attorney in prosecution of bankrupt's president held proper.**

Permitting attorney interest in bankruptcy proceedings of store of which defendant was president to sit with district attorney in prosecution for using mails to defraud *held* proper, in absence of proof that the attorney took any part other than to advise the district attorney.

**12. Criminal law ⬤⟶1043(3)—Defendant could not, on appeal, first object to admission of books for insufficient authentication, where on trial he treated authentication as sufficient.**

Books of bankrupt department store *held* admissible in evidence, in prosecution of president for using mails in furtherance of scheme to defraud, where an accountant's testimony identifying the books was apparently accepted by both parties as sufficient authentication.

In Error to the District Court of the United States for the Eastern District of Michigan; Xenophon Hicks, Judge.

Benedict Krotkiewicz was convicted of using the United States mails in furtherance of a scheme to defraud, and he brings error. Affirmed.

Lee E. Joslyn, of Detroit, Mich. (Joslyn, Joslyn & Joslyn, of Detroit, Mich., on the brief), for plaintiff in error.

Charles A. Meyer, Asst. U. S. Atty., of Detroit, Mich. (Hon. Delos G. Smith, U. S. Atty., and Wallace Visscher, both of Detroit, Mich., on the brief), for the United States.

Before DENISON and MOORMAN, Circuit Judges, and GORE, District Judge.

GORE, District Judge. Plaintiff in error was indicted in four counts. The first, second, and third counts charged him with using the United States mails in furtherance of a scheme to defraud, in violation of section 215 of the Penal Code (Comp. St. § 10385), and the fourth charged him with concealing assets of the Polonia Department Store, a corporation, of which he was president and chief stockholder, from the trustee in bankruptcy.

Before trial he filed a motion to quash the indictment, and upon consideration of which the court quashed the fourth count. At the conclusion of the government's proof, the motion was renewed, and the court sustained same as to the third count, and directed a verdict of not guilty as to that, leaving only the first and second counts to be considered.

The first count charges that plaintiff in error devised a scheme to defraud wholesale merchants of their merchandise, and in furtherance of the scheme prepared a false statement of the financial condition of the Polonia Department Store, of which he was president, manager, treasurer, and the chief stockholder, and sent same to the Florsheim Shoe Company, Chicago, Ill., through the United States mails, thereby obtaining credit to which said store was not entitled, and merchandise for which it did not intend to pay;

and the second count charges the same, except the letter, or statement, was mailed to the David Adler & Sons Clothing Company, Milwaukee, Wis.

Plaintiff in error was convicted on the first and second counts, and sentenced to pay a fine of $1,000 in each, and to be imprisoned in the United States penitentiary at Leavenworth, Kan., for a full period of three years upon each count, the imprisonment to run concurrently.

Many exceptions were made to the admissibility of testimony, and rulings of the court, during the progress of the trial. Motions for new trial, and in arrest of judgment, were seasonably made and overruled.

[1] The first question necessary for determination is the sufficiency of the motion to quash the indictment, assignments No. 1 and 2. First, whether defendant's motion to quash count 1 should have been sustained upon the ground that it failed "to allege and show what the scheme to defraud, devised, or intending to be devised, by the defendant, was, or is." The indictment alleges that the scheme or artifice to defraud was the making of a false statement as to the financial condition of the Polonia Department Store; that in said statement, which was signed by the plaintiff in error, and transmitted to the Florsheim Shoe Company through the United States mails, it is claimed that the Polonia Department Store was the owner of merchandise valued, at cost, at $32,582.40, land and buildings worth $41,100, prepaid items valued at $4,032.03, and other assets, aggregating $91,026.76, and its total liabilities were, for merchandise $6,236.66, and notes payable to banks $9,300, aggregating $15,536.66, showing a net worth, carried as surplus and undivided profits of $75,490.10, which was false and fraudulent, and by means of which defendant willfully, fraudulently, and feloniously did obtain merchandise and did defraud the Florsheim Shoe Company of its property, etc. Considering the entire count, we think the intent is clear enough to charge the mailing of the letter pursuant to a previous scheme which was the same scheme as the one more fully described in reciting its execution.

[2] It is further insisted that the first count is insufficient, because it is not charged that the defendant "knew, or had reason to believe," that the statements made by him were false. This question was not made one of the grounds for quashing count 1, but same is made in brief for plaintiff in error. On the facts set out in count 1, it is clear

that plaintiff in error knew, or had reason to believe, that the statements made by him to Florsheim Shoe Company as to the financial condition of the Polonia Department Store were false, and said count is good under authority of Bettman v. U. S. (C. C. A.) 224 F. 819. Knowledge by him of one important falsity is enough to make the indictment good, and his participation in the previous sale of the real estate, whereby it ceased to be a $41,000 asset, is definitely alleged.

What has just been said of the second ground to quash count 1 is applicable to the attack made on the second count, that "the count contains no allegation, and wholly fails to allege, that the defendant, Benedict Krotkiewicz, knew that the statements referred to in said indictment were false." On the contrary, the indictment in this count, after alleging the falsity of the various statements, expressly says: "All of which facts and premises were well known to said defendant."

[3] The indictment, and the two counts thereof, surely informed the defendant that he was charged with devising a scheme or artifice to defraud by obtaining property by means of false and fraudulent pretenses or representations from the Florsheim Shoe Company and the David Adler & Sons Clothing Company, and for the purpose of executing such scheme or artifice he placed or caused to be placed an alleged false statement in a post office station in the city of Detroit, in the state of Michigan, on the dates named in the indictment, post prepaid, addressed to and to be sent or delivered by the post office establishment of the United States to the addressees. He was fully informed by the indictment of the nature of the accusation against him, to the end that he could prepare his defense and plead the judgment as a bar to any subsequent prosecution for the same offense, which is sufficient. See U. S. v. Cruikshank, 92 U. S. 542, 23 L. Ed. 588; U. S. v. Simmons, 96 U. S. 360, 24 L. Ed. 819; U. S. v. Carll, 105 U. S. 611, 26 L. Ed. 1135; U. S. v. Hess, 124 U. S. 483, 8 S. Ct. 571, 31 L. Ed. 516.

[4] Counsel assigns as error the refusal of the court to direct a verdict of not guilty at the close of all the testimony in the case. This assignment involves the question of whether or not there was any substantial evidence offered by the government upon which a verdict of guilt could be predicated. The evidence showed that plaintiff in error was president, manager, and owner of practically all the stock of the Polonia Department Store; that on March 1, 1923, the Florsheim Shoe Company received through the mail a financial statement signed by Mr. Krotkiewicz, as president of said store, which signature was identified to be in his handwriting, and which fact was admitted. In said statement, certain representations were made as to the value and character of the assets owned by the Polonia Department Store, as well as their liabilities, as of January 2, 1923, in which it was claimed that the corporation owned real estate, in its own name, of the value of $41,000, when, as a matter of fact, it owned no real estate whatever; that its total assets were $91,026.76, and total liabilities of $15,536.66, net worth, surplus, and undivided profits, $75,490.10, and in less than one year's time the Polonia Department Store was adjudged a bankrupt, and its total assets invoiced at about $17,000.

The uncontradicted proof was that in December, 1923, before the alleged financial statements were mailed to Florsheim Shoe Company and David Adler & Sons Clothing Company, the Polonia Department Store had contracted to sell all the real estate it owned to Walter Wanicki and wife, Victoria Wanicki; that on the 2d day of January, 1923, this contract was reduced to writing, and the sale was in consideration of the sum of $20,000, $13,000 to be in cash, and the remaining $7,000 in 60 days from date thereof. The deed to the property was not executed until January 12, 1923, and only $5,000 of the $13,000 was paid on January 2d, but the balance of the $13,000 was paid on the 12th.

It is significant that the sale of the real estate was made on the date the financial statement was to be effective, to wit, January 2, 1923, and that in the financial statement he places a value of $41,100 on the real estate, while in the sale it is placed at $20,000 and, aside from this, it is shown by all the proof on the question that a reasonable value of the real estate in January, 1923, was from $20,000 to $24,000.

During the months of October, November, and December, 1923, the Polonia Department Store bought considerably more goods than it bought for the corresponding months in 1922, while the sales were slightly less than the corresponding months in 1922; purchases for the last four months in 1922 amounting to $9,217.64, while for the same months in 1923 they amounted to $39,422.62, and the sales for those months in 1922 amounted to $18,900.87, with no sales reported in November, and for the same

months of 1923 the sales amounted to $15,-664.90. In view of the fact that in February following the invoice price of the merchandise was only $17,000, it seems clear that the court was not in error in overruling the motion for a directed verdict under Levinson v. U. S. (C. C. A.) 5 F.(2d) 567. The indictment charged, not only the mailing of false statements, but an intent to procure goods thereon and not pay for them, and this evidence substantially tended to show the fraudulent character of the scheme.

[5] Counsel complains of the action of the court in receiving in evidence the financial statement alleged to have been sent to the David Adler & Sons Clothing Company, because "there is no proof as to how it was received, or whether it was mailed by Mr. Krotkiewicz, or under his direction." There is no affirmative proof that plaintiff in error placed, or caused to be placed, the statements in question in the United States mails, and from the very nature of the transaction it would be difficult to produce such direct evidence; but the proof shows that the statements bore plaintiff in error's signature, in his handwriting (which latter fact he admits), that they were transmitted and delivered to the Florsheim Shoe Company and the David Adler & Sons Clothing Company by the post office establishment of the United States, in an envelope addressed to them, and bearing a postage stamp, and it is uncontradicted that plaintiff in error was the president, manager, and chief stockholder of the Polonia Department Store; hence, from all the circumstances, the jury was justified in concluding that plaintiff in error mailed, or caused the statements to be mailed. There was no error in the court admitting said statements in evidence. The case of Levinson v. U. S., supra, is directly in point on this question.

[6] It is also insisted for the plaintiff in error that the court was in error in admitting in evidence the bankruptcy schedules of the Polonia Department Store, or any testimony relative to the bankruptcy proceedings, upon the ground that it was "incompetent, irrelevant, and immaterial, and not proper evidence against the defendant in this case." Considering that only four months elapsed between the sending of the statement to the David Adler & Sons Clothing Company, and the adjudication of bankruptcy, we think the lapse of time was not sufficient to make this incompetent or immaterial, and that under the authority of Optner v. U. S. (6th Cir.) 13 F.(2d) 11, the court was not in error. These schedules were relevant, not because they were bankruptcy schedules, but because they were signed by this defendant and had become admissions by him.

[7] Defendant testified in his own behalf and on original examination gave his age and residence, place of business, and length of time he had lived in Detroit. He stated that he started in the mercantile business in Detroit about 1890; that he was president of the Polonia Department Store; that during his 26 years in business he had never had any trouble, prior to his present trouble, with any creditor; that he had never been sued, and on cross-examination he stated that he ran the business of the Polonia Department Store. His testimony was, in effect, proof of good character, and to the same point in his defense he called other witnesses. This was a point material to the merits of his defense. The judge charged the jury relative to his testimony as follows, which charge was excepted to by his counsel:

"I instruct you that, when he does go upon the witness stand, and after having gone upon the witness stand, he fails to deny or fails to explain the evidence of an incriminating nature against him, when he has it within his knowledge and power to explain such evidence, that the jury have a right to consider upon an examination of the case, along with all the other facts and circumstances in the case, his failure to give his version, or explain incriminating evidence against him, of which he has knowledge, and which he might explain. It is a question of fact for the jury to determine as to whether or not the defendant had any knowledge of the circumstances against him, which could be of any benefit to the jury."

Under the Fifth Amendment to the Constitution of the United States, no person shall be compelled in any criminal case to be a witness against himself, and by Act of Congress of March 16, 1878, c. 37, 20 Stat. 30 (U. S. Comp. St. § 1465), it is provided that a person charged with an offense, shall, at his own request, "but not otherwise," be a competent witness, and "his failure to make such request shall not create any presumption against him."

[8] It is plain that under these provisions a defendant, in a criminal case, by failing to testify, is protected from unfavorable comment upon his silence by court or counsel; but if he voluntarily becomes a witness, and testifies on his own behalf to the merits, "or to a material part of the merits, of the case, or of the subject-matter of the offense

charged against him," he waives his privilege of silence, and his privilege of freedom from comment upon his testimony, and "upon his failure to testify to parts of the merits of the case upon which he gives no testimony." Caminetti v. U. S., 242 U. S. 470, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168; Diggs v. U. S. (C. C. A.) 220 F. 545; Grantello v. U. S. (C. C. A.) 3 F.(2d) 117.

In Diggs v. U. S., supra, Judge Gilbert, speaking for the court, stated:

"The defendant, having taken the stand and offered his testimony upon the merits of his case, and having entered into it in part, rendered himself amenable to cross-examination as to the whole. * * * A defendant cannot tell a half story touching his defense, which is a half story from his standpoint of the merits of the case, then abruptly stop in his course and decline to answer further, and expect to reap the benefit for himself to be derived therefrom, without incurring the discredit that is, by the rules of evidence and legal inference, visited upon the ordinary witness pursuing a like course"—citing Fitzpatrick v. U. S., 178 U. S. 304, 20 S. Ct. 944, 44 L. Ed. 1078, and many other cases.

In Brown v. Walker, 161 U. S. 591, 16 S. Ct. 644, 40 L. Ed. 819 et seq., it is said:

"Thus, if the witness himself elects to waive his privilege, as he may doubtless do, since the privilege is for his protection, and not for that of other parties, and discloses his criminal connections, he is not permitted to stop, but must go on and make a full disclosure."

[9] If plaintiff in error had not testified regarding the merits of the case, as in Grantello v. U. S., supra, he would not have subjected himself to cross-examination or to comment by the court or counsel, but his testimony, wherein he said he was 54 years old, had been in business in Detroit for 26 years, and that he had never been sued or had any trouble with any creditor before, was testimony to facts material to his defense, and related to the merits of the case, and he thereby waived his privilege of freedom from fair comment, and there was no error in the charge upon this question.

[10] It is also insisted that the court's charge upon the question of intent was improper. We have read the charge upon this question, and find no prejudicial error in same. In fact, the jury is impressed, at different times in the charge, that "intent" was the gist of the offense; and throughout the entire charge the jury was instructed that they must find the fraudulent intent to defraud, to their satisfaction beyond a reasonable doubt, otherwise the defendant would be entitled to a verdict of not guilty.

[11] It is urged as a further ground of reversal of the judgment below that the court erred in permitting one Max Kahn, an attorney who was interested in the bankruptcy cases, to sit with the district attorney, and advise with him during the progress of the trial. The proof does not show that Kahn took any interest in the trial other than to advise with the district attorney. Kahn was perfectly familiar with the facts of the case, and we fail to see wherein his presence and assistance to the district attorney were erroneous. We know of no reason why the district attorney cannot obtain knowledge of the facts in any case from any reliable source. It is the fact, and not the source, which is controlling.

Counsel for plaintiff in error complains at the action of the court in refusing to charge his eighth and ninth special requests, relative to proof of good character of defendant. We have carefully read the charge of the court upon this question, and conclude that same is sufficient, and his refusal to charge as requested was not so prejudicial as to require a reversal. Strom v. U. S. (C. C. A.) 12 F.(2d) 233.

[12] It is claimed that error was committed in admitting in evidence the books of defendant's company and the testimony of an expert accountant based thereon. The ground of this is that the books were not properly identified or authenticated as the records of the company's business, or shown to have been kept by or under the supervision of defendant. It appears that, when objection was made to the accountant's testimony, the district attorney suggested that the books would be authenticated later, whereupon the testimony was admitted. The books, with perhaps one exception, were in the courtroom, and a later witness, Roseroot, testified that he was employed by defendant (who as the record shows owned more than 95 per cent. of the stock of the company) to open the books; that "I was in charge of those books until about the end of 1923, * * * until the time of the bankruptcy" (the scheme having been devised and executed, as claimed by the government, in the early part of 1923), and "as far as I know those entries in that book are correct." This testimony was apparently accepted by both parties as a sufficient authentication; the defendant did not thereafter renew his motion to strike the

books from the record as evidence, but cross-examined witnesses with reference to them upon the assumption that they were a true record of the business of the company. While authentication- might have been more complete than. it was by the testimony of this witness, yet apparently both the government and the defendant thereafter thought it had been sufficient, and defendant is not now in position to claim that prejudicial error was committed in this respect.

The other assignments do not seem to us to be of sufficient importance to require discussion, and the judgment is accordingly affirmed.