## HAVENER v. UNITED STATES. *
### No. 239.

Circuit Court of Appeals, Tenth Circuit.
April 6, 1931.

KENNEDY, District Judge, dissenting.

*Rehearing denied June 1, 1931.

James M. Johnson and Donald W. Johnson, both of Kansas City, Mo., for appellant.

S. M. Brewster, U. S. Atty., and L. E. Wyman and Donald C. Little, Asst. U. S. Attys., all of Topeka, Kan.

Before COTTERAL and PHILLIPS, Circuit Judges, and KENNEDY, District Judge.

PHILLIPS, Circuit Judge.

Charles E. Havener was indicted, tried, convicted and sentenced for a violation of section 215 of the Criminal Code (section 338, title 18, USCA).

The indictment charged that defendant devised a scheme to defraud R. G. Biles and to obtain certain money from Biles by means of false and fraudulent representations and promises, as follows:

"That he * * * would and did represent * * * that he had in his possession for sale certain valid * * * obligations of the Hunter Steel Company, a corporation, * * * which corporation the said * * * Havener represented to be conducted in a businesslike manner, and having good and well established business, and having assets of some $14,000,000.00, and by means of such representations the said * * * Havener would and did induce the said R. G. Biles * * * to pay to him * * * the sum of $2500.00 as consideration for two notes of the Hunter Steel Company, made payable to Arthur H. Hunter and endorsed on the back by said * * * Havener, and at the same time delivered to the said R. G. Biles * * * a note * * * purporting on its face to have been executed by the Colorado Utah Mines Holding Company by Charles E. Havener, president, and M. C. Havener, secretary, and being endorsed on the back by Charles E. Havener, J. W. Phares, and G. A. Swallow as trustees of the Colorado Utah Mines Holding Company, a trust estate. * * *

"Said * * * Havener * * * further alleged that said note of the Colorado Utah Mines Holding Company was * * * valid * * * and that the same would be paid when due; and said * * * Havener further alleged that said Hunter Steel Company notes * * * would be paid on their due date. * * *

"That after said * * * Havener should procure, as he did procure, the $2500.00 of the monies of the said R. G. Biles * * * that he would, and did, represent to the said R. G. Biles * * * that said Hunter Steel Company had directed him to turn back to the Hunter Steel Company their notes and that the said Hunter Steel Company would return all contracts and notes calling delivery off which they desired to do without proceedings in court and for the reason that they could not handle Willard Iron property; the said * * * Havener having also represented * * * to * * * R. G. Biles * * * that said notes of the Hunter Steel Company had been received by the said * * * Havener as president of the Colorado Utah Mines Holding Company as a part of the consideration and assets which * * * Havener claimed belonged to the Colorado Utah Mines Holding Company.

"That * * * Havener as a further part of said scheme and artifice to defraud also alleged that as consideration for said R. G. Biles * * * returning to him the said notes of the Hunter Steel Company for $5000.00 each, and the said note of the Colorado Utah Mines Holding Company for $10,000.00 he would, and did, give to the said R. G. Biles * * * his personal note in the amount of $10,000.00 on its face due August 12th, 1925, which he * * * represented was better * * * than the Hunter Steel Company notes * * * thereby representing and intending the said R. G. Biles * * * to understand and believe that said note of said * * * Havener would be paid when due on August 12th, 1925."

The indictment further charged that defendant knew at the time he made such representations that they were false and fraudulent in the following particulars: (1) That the Hunter Company notes were not given to defendant in consideration of the purchase-price of the Holding Company property, but had been delivered to defendant on a contract to sell for eighty per cent. of their face value. (2) That the Holding Company note had been canceled and recalled on or about January 9, 1924. (3) That the Hunter Company, on January 15, 1925, had not terminated its contract with defendant to sell such Hunter Company notes. (4) That the defendant did not intend to pay his personal note for $10,000, on August 12, 1925, or at any other time.

The indictment further charged that the defendant, for the purpose of executing such scheme and artifice, caused a certain letter, contained in an envelope addressed to R. G. Biles, to be delivered to Biles through the post office at Hill City, Kansas; and set such letter out in full.

Such letter in part reads as follows:

"Hotel Angelus, Los Angeles, California,
"January 15, 1925.
" * * * My personal note is enclosed in amount $10,000.00 due August 12, 1925, the same due date as Hunter Steel Company notes, which must be returned to Hunter Company in full cancellation of their purchase of our Willard Iron property, the final settlement reached in New York yesterday between Hunter Steel Company attorneys and our attorneys, and therefore, I have sent you and enclosed my own note for the $10,000 which is better anyway than Hunter Steel Company's note with our Holding Company's judgment note as security back of it.

"The telegram I received yesterday from the New York attorneys reads as follows:

" 'Hunter Steel Company ask you return back their notes and they will return all contracts and notes calling deal off which they desire to do without proceedings in court,' and their reason is They Cannot Handle Willard Iron Property—as there is only one thing for us to do, namely, take back our property and undo all that has been done between the Hunter Steel Company and Colorado Utah Mines Holding Company—regardless of the fact that we are heavy losers in the whole transactions through loss of time as well as capital.

"Please return the two $5,000 Hunter Steel notes to me immediately—registered mail—in the enclosed stamped envelope which I have addressed for your use. * * *
"Charles E. Havener."

After a verdict of guilty, counsel for defendant interposed a motion in arrest of judgment on the ground that the indictment failed to state facts sufficient to constitute an offense under the laws of the United States.

Counsel for defendant contend that the court erred in overruling the motion in arrest of judgment.

While the formation of a scheme or artifice to defraud is an essential element of the offense defined in section 215 of the Criminal Code, the gist of the offense is the use of the mails for the purpose of executing or attempting to execute such scheme, and it is, therefore, sufficient to charge the scheme with such particularity as will enable the accused to know what is intended and to apprise him of what he will be required to meet on the trial. Brady v. United States (C. C. A. 8) 24 F.(2d) 397–398; Horn v. United States (C. C. A. 8) 182 F. 721, 727; Brooks v. United States (C. C. A. 8) 146 F. 223, 227; Cochran v. United States (C. C. A. 8) 41 F. (2d) 193, 197.

The scheme need not be pleaded with all the certainty as to time, place and circumstances required in charging the gist of the offense. Brady v. United States, supra; Cochran v. United States, supra; Savage v. United States (C. C. A. 8) 270 F. 14, 18; Gardner v. United States (C. C. A. 8) 230 F. 575; McClendon v. United States (C. C. A. 8) 229 F. 523, 525; Brooks v. United States, supra; Chew v. United States (C. C. A. 8) 9 F.(2d) 348, 351; Mathews v. United States (C. C. A. 8) 15 F.(2d) 139, 143.

The substance of the charge with respect to the scheme is that the defendant, actuated with a fraudulent intent, devised a scheme to induce Biles to pay him $2,500 in exchange for the two notes of the Hunter Company and to thereafter induce Biles to exchange such Hunter Company notes for the worthless note of the defendant by means of the false and fraudulent representations alleged.

The indictment, while inartificially drawn, charged the scheme with sufficient certainty to enable the defendant to know what was intended and to apprise him of what he would be required to meet on the trial. The use of the mails for the purpose of executing a scheme was aptly and properly charged. The indictment was not open to attack, especially after a verdict, by motion in arrest of judgment.

At the close of the evidence, counsel for defendant moved the court to instruct the jury to return a verdict of not guilty.

Counsel for the defendant contend that the proof did not establish (1) the allegations of fraud set forth in the indictment, and (2) that the defendant caused the letter, alleged in the indictment, to be delivered by mail, according to the direction thereon, for the purpose of executing such scheme to defraud.

R. G. Biles testified that he became acquainted with the defendant in 1920; that in 1920 and 1922 he purchased from the defendant beneficial certificates in the Holding Company for $3500; that in December, 1924,

he had a conversation with him at Logan, Kansas, concerning certain notes of the Hunter Company; that on December 18, 1924, at Biles' home in Hill City, Kansas, defendant showed Biles and his wife a prospectus and financial statement of the Hunter Company which stated it had total assets of twenty-six million dollars; that defendant exhibited two notes of the Hunter Company for five thousand dollars each, due August 12, 1925, and stated that they were good and would be paid when due; that they were of a total issue of two hundred and fifty thousand dollars, which the Hunter Company had delivered to the defendant in payment of property of the Holding Company; that the funds derived therefrom would go to the Holding Company; that the defendant offered to give him the two Hunter Company notes of five thousand dollars each and a note of the Holding Company for ten thousand dollars and his personal note for forty thousand dollars in exchange for twenty-five hundred dollars in cash; that the defendant stated the Holding Company note was good; that defendant also stated that such twenty-five hundred dollars in cash, within three years, would be worth three million dollars to defendant; that he paid the defendant five hundred dollars in cash, gave him a draft for two thousand dollars and received the two Hunter Company notes for five thousand dollars, and the Holding Company note for ten thousand dollars as collateral thereto.

He further testified that thereafter he received by registered mail, from the postmaster at Hill City, Kansas, the letter set out in the indictment; that there was enclosed in such letter a personal note of the defendant for the principal sum of ten thousand dollars, dated January 15, 1925, due August 12, 1925, with interest from maturity at ten per cent.; that when he received such letter he returned the two Hunter Company notes and the Holding Company note to the defendant; that defendant visited him between May 15 and 20, 1927, and on such occasion he requested defendant to pay the ten thousand dollar note of January 15, 1925; that defendant told him "he could not pay it, that he didn't have the money."

J. W. Phares testified that he was a trustee of the Holding Company from the date of its organization until 1926; that an arrangement was tentatively entered into by which the Hunter Company agreed to take over the assets of the Holding Company and to pay therefore twenty-five dollars for each outstanding share of the Holding Company;

that thereupon and on January 9, 1924, the trustees adopted a resolution cancelling and rescinding all collateral notes of the company and directing the officers to recall such notes for cancellation; that such notes had been executed and delivered to the defendant to dispose of for the purpose of raising money to finance the Holding Company and were in the possession of defendant; that the board of trustees did not thereafter authorize any notes of the Holding Company to be issued; that the trustees of the Holding Company never authorized defendant to sell any of the notes of the Hunter Company as the property or assets of the Holding Company; and that he never knew of defendant transmitting to the Holding Company any money received from the sale of Hunter Company notes.

Upon cross-examination, he testified that Mr. Hunter had told him in August, 1924, that he had issued some notes to defendant, who was selling them on a commission "to help him finance until they (the Hunter Company) could complete the sale of their stock to take up" the purchase-price of the Holding Company's property, and that such notes were to be sold at not less than eighty per cent. of their face value.

The evidence established that defendant made the representations substantially as alleged in the indictment, and that they were false in the several particulars alleged, except that it was not shown the Hunter Company had not terminated its contract with the defendant to sell such notes.

Where an indictment, based on section 215, supra, charges a number of false representations tending to prove the existence of a scheme, it is not necessary to prove all of the false representations charged if proof of a lesser number lays a sufficient foundation for a finding by the jury that the scheme in substance was in fact devised. Mathews v. United States (C. C. A. 8) 15 F.(2d) 139, 144–5; Kaplan v. United States (C. C. A. 2) 18 F. (2d) 939; Nash v. United States, 229 U. S. 373, 33 S. Ct. 780, 57 L. Ed. 1232.

It may be that, on December 18, 1924, defendant had not fully devised, in all its details, the ultimate scheme charged in the indictment, but he had, on January 15, 1925, when he mailed the letter of that date. No doubt the defendant fashioned the scheme, as he proceeded with the execution thereof, to meet the exigencies of the changing circumstances, but he had completed the ultimate scheme by which he purposed to defraud Biles before he used the mails in furtherance there-

of. In other words, the proof shows that he started out with a definite purpose to defraud Biles; that he finally purposed to accomplish such result by the scheme charged in the indictment, and that, after having fully evolved such scheme, he used the mails for the purpose of executing the same. This, in our opinion, was sufficient.

We conclude that there was sufficient false representation proven to warrant the jury in finding that the defendant devised substantially the scheme alleged in the indictment.

The use of the mails in the furtherance of a scheme may be established by circumstantial evidence. Cochran v. United States (C. C. A.) 41 F.(2d) 193, 205; Krotkiewicz v. United States (C. C. A. 6) 19 F.(2d) 421; Levinson v. United States (C. C. A. 6) 5 F.(2d) 567; Baker v. United States (C. C. A. 6) 10 F.(2d) 60; Dysart v. United States (C. C. A. 5) 4 F.(2d) 765.

The letter was received by Biles by registered mail through the post office at Hill City, Kansas; it was addressed to Mr. and Mrs. R. G. Biles; it referred to the prior transaction between the defendant and Biles; it purported to have been written by the defendant; and it enclosed a note purporting to have been executed by the defendant. Biles returned the Hunter Company notes and the Holding Company note to defendant. When Biles demanded payment from the defendant of the note forwarded with such letter, defendant did not deny that it was his note, but stated that he could not pay it because he did not have the money. This was a tacit admission that defendant had forwarded such note and letter through the United States mails. It is improbable that any one but defendant and Biles were sufficiently acquainted with the prior transaction to have written such a letter. These circumstances, in our judgment, warranted the jury in finding that the defendant forwarded the letter by registered mail, directed to Biles at Hill City, Kansas.

The judgment is affirmed.

KENNEDY, District Judge (dissenting).

I agree that the indictment sets up an offense under the statute, however weird and unusual the alleged scheme to defraud may appear to be. I likewise agree that the proofs tending to support the use of the mails, although meager, are sufficient. I cannot, however, agree that the proofs purporting to support the alleged scheme to defraud are sufficient to sustain the judgment. The alleged scheme to defraud set forth in the indictment is to the effect that the defendant, previous to the carrying out of the transactions, involved, would first have Biles take over the Hunter and Holding company notes together with that of the defendant and then induce Biles to exchange the Hunter notes for the personal note of the defendant which he (the defendant) did not intend to pay. All the elements above outlined are necessary to constitute the scheme to defraud, else the indictment must fall. While there is proof that the defendant did certain acts which it may be conceded resulted in the loss of $2,500 to Biles; yet in my opinion there is an utter lack of evidence which in any way tends to support the charge that, prior to the beginning of the transactions between Biles and the defendant, the defendant had in mind that portion of the alleged scheme to subsequently substitute his own note for the Hunter notes in the hands of Biles. Nor do I find anything in the evidence which will permit a reasonable inference of this kind to be drawn. On the other hand, the evidence tends to show, as I read it, that, after the Hunter deal fell through and it became desirable to return the Hunter notes, the defendant then and only then conceived the idea of substituting his own note for the purpose of getting the Hunter notes back. Therefore the proof would seem to fail in supporting an integral part of the charge set forth in the indictment. Each essential element of the charge laid in an indictment must be proved beyond a reasonable doubt.

Nor in my opinion, does it do to say that that portion of the scheme to substitute the defendant's note for the Hunter notes in the hands of Biles may have been devised later, for the reason that it would be a substantial variance from the charge laid in the indictment, and also for the reason that there is no proof tending to show that the Hunter notes sold to Biles by the defendant were not good and collectable at the time they were sold, but affirmative proof that the defendant had the right to dispose of them. The manner or method in which he was to account for the proceeds had nothing to do with their negotiability or with their validity as evidence of indebtedness in the hands of Biles. The first part of the alleged scheme to defraud by selling the Hunter notes to Biles, assuming as we must that these notes were valuable and that the defendant had the right to dispose of them, because there is in the record no evidence to the contrary, was not, standing alone, a scheme to defraud in any respect, and it takes the latter element of the alleged

substitution in which alone the mails were used to constitute any crime whatever under the statute. Certainly the chief and substantial element of a scheme to defraud cannot be an afterthought.

For the reasons stated, I feel impelled to dissent from the conclusion of the majority.