KAPLAN et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. March 7, 1927.)

No. 161.

1. Post office ⊜50—Evidence in prosecution for scheme to defraud by use of mails in selling corporate stock held for jury (Criminal Code, § 215 [Comp. St. § 10385]).

In prosecution, under Criminal Code, § 215 (Comp. St. § 10385), for scheme to defraud by sale of unsold capital stock for different corporations, in execution of which a letter was sent through the United States mails, evidence held sufficient for jury.

2. Post office ⊜49(5)—Admitting card sent out through mails in selling corporate stocks held not harmful, as applied to defendant with notice thereof (Criminal Code, § 215 [Comp. St. § 10385]).

In prosecution, under Criminal Code, § 215 (Comp. St. § 10385), charging a scheme to defraud in selling unsold capital stock for different corporations, pursuant to which letter was sent through United States mails, admission of postal card held not harmful error, as applied to defendant, shown to have always been notified that card was going out, although it was not particularly shown that it had been called to his attention.

3. Post office ⊜49(11)—Letters in furtherance of concerted action in disposing of stock held to sufficiently establish scheme to defraud by use of mails (Criminal Code, § 215 [Comp. St. § 10385]).

Letter sent in the mails in furtherance of concerted action of salesman to dispose of stock at profit to them individually held to sufficiently establish charge, under Criminal Code, § 215 (Comp. St. § 10385), of scheme to defraud in sale of unsold capital stock for different corporations, pursuant to which letter was sent through mails.

4. Post office ⊜35(9)—Defendants, participating in scheme to fraudulently sell stock by use of mails, need not have been parties to formation of scheme (Criminal Code, § 215 [Comp. St. § 10385]).

Defendants, in prosecution under Criminal Code, § 215 (Comp. St. § 10385), for scheme to defraud in sale of unsold capital stock for different corporations, pursuant to which letter was sent through mails, need not be shown to have been parties to formation of scheme, since, if they knowingly joined it, they are responsible as if they had joined at time of formation.

5. Criminal law ⊜741(2)—Identity of defendant, alleged to have participated in scheme to sell stock, is question of fact (Criminal Code, § 215 [Comp. St. § 10385]).

Identity of defendant, alleged to have participated in scheme to defraud in selling unsold capital stock for different corporations, pursuant to which letter was sent through mails, in violation of Criminal Code, § 215 (Comp. St. § 10385), is question of fact.

**6. Criminal law ⊕⇒1167(1)—Conviction under wrong name, after being so identified, will not be reversed, in absence of objection or attempt to correct error below (Criminal Code, § 215 [Comp. St. § 10385]).**

Where defendant, in prosecution under Criminal Code, § 215 (Comp. St. § 10385), for scheme to defraud in selling unsold capital stock of different corporations, pursuant to which letter was sent through mails, was identified under certain name and convicted under such name, although in fact it was not his true name, the conviction will be upheld, where no objection was made nor attempt to correct error below.

**7. Criminal law ⊕⇒371(1)—Admitting evidence that same salesmen charged with scheme to defraud in sale of corporate stock were used in all propositions held not error (Criminal Code, § 215 [Comp. St. § 10385]).**

In prosecution, under Criminal Code, § 215 (Comp. St. § 10385), for scheme to defraud in selling unsold capital stock of different corporations, pursuant to which letter was sent through the mails, admitting evidence that same salesmen, who were defendants, were used in all propositions, held not error, since it was competent to show, as proving intent, that defendants committed similar offenses.

**8. Criminal law ⊕⇒1159(3)—Jury's finding on conflicting evidence of connection with fraudulent scheme, in furtherance of which mails were used, is binding on appellate court (Criminal Code, § 215 [Comp. St. § 10385]).**

Jury's finding on conflicting evidence relative to defendants' connection with fraudulent scheme in selling unsold corporate stock for different corporations, in furtherance of which mails were used, in violation of Criminal Code, § 215 (Comp. St. § 10385), is binding on appellate court.

**9. Post office ⊕⇒48(8)—Proof of every misrepresentation alleged is not required in prosecution for scheme to defraud, in furtherance of which mails were used (Criminal Code, § 215 [Comp. St. § 10385]).**

In prosecution, under Criminal Code, § 215 (Comp. St. § 10385), for scheme to defraud in selling capital stock for different corporations, pursuant to which mails were used, it is not necessary that every misrepresentation alleged in the indictment be proven; it being sufficient to establish a common scheme intended for using mails.

**10. Post office ⊕⇒49(5)—In prosecution for scheme to defraud by use of mails, testimony of victims that unidentified salesmen approached them held properly received (Criminal Code, § 215 [Comp. St. § 10385]).**

In prosecution, under Criminal Code, § 215 (Comp. St. § 10385), for scheme to defraud in sale of unsold capital stock for different corporations, in furtherance of which mails were used, testimony of victims of schemes that unidentified salesmen approached and talked to them held properly received, as showing practical application of method of carrying out scheme.

In Error to the District Court of the United States for the Southern District of New York.

George J. Kaplan and others were convicted, under Criminal Code, § 215, of a scheme to defraud, in execution whereof a letter was sent through the United States mail, and they bring error. Affirmed.

Writs of error to the District Court for the Southern District of New York. Thirteen defendants named in the indictment were tried and convicted of a violation of section 215 of the United States Criminal Code (Comp. St. § 10385). They sued out writs of error. Judgments of conviction affirmed.

Rothwell, Harper & Matthews, of New York City (Ben A. Matthews and Albert C. Rothwell, both of New York City, of counsel), for plaintiff in error Kaplan.

David C. Myers, of New York City, for plaintiff in error Dorn.

David D. Stansbury, of Chicago, Ill., for plaintiff in error Block.

George Z. Medalie, of New York City, for plaintiffs in error Cohen, Palter, and Wallach.

Harry Kopp, of New York City, for plaintiffs in error Shaw and Goulson.

Emory R. Buckner, U. S. Atty., of New York City (Charles L. Sylvester, of New York City, of counsel), for the United States.

Before HOUGH, MANTON, and SWAN, Circuit Judges.

MANTON, Circuit Judge. This indictment charged 65 defendants with violations of section 215 of the United States Criminal Code (Comp. St. § 10385). Thirteen were convicted at the trial and 8 were acquitted. Other disposition, unnecessary of mention, was made of the charges against the other defendants.

The Crager System, Inc., was organized for selling stock securities. It circularized corporations, offering to take off their hands large blocks of their unsold capital stock, with the idea and purpose of reloading the stock so taken upon the stockholders of each such corporation. Reloading in this trade meant selling the unsold stock securities to the present stockholders.

Plaintiff in error Dorn, by means of the same scheme, had secured a contract from the Glass Casket Corporation of Altoona, Pa., for the sale of 19,000 shares of its stock. The indictment charged that, as a part of the scheme, thus referred to, this contract was

canceled, and one of similar purport was entered into on April 18, 1922, between Henry Crager, doing business as A. B. Heim & Co., and the Glass Casket Corporation. They secured a list of the stockholders of the Glass Casket Corporation, mailed letters to them advising them that there were certain favorable developments in the business of the Glass Casket Corporation, that a certain contract had made their stock more valuable, and that they had been allotted a certain number of shares, and advised the stockholders not to sell their present stock holdings.

By the indictment, a charge of a scheme to defraud was further alleged in the allegation that there were sent to the stockholders of the Glass Casket Corporation letters, purporting to come from three firms, offering to purchase their stock, and that the plaintiffs in error personally called on the stockholders and falsely-informed them that A. B. Heim & Co., a brokerage firm, had contracted to purchase all the unsold shares of stock of the Glass Casket Corporation; that the latter had allotted to each of the stockholders a certain number of shares of the stock of the company, and that a release would have to be signed before A. B. Heim & Co. could handle the stock; and that the stockholders could profit by refusing to sign the release and by purchasing the shares allotted to them. The charge further was that the plaintiffs in error, with others, represented that A. B. Heim & Co. would have the stock of the Glass Casket Corporation listed on the New York Stock Exchange, and that it would be sold at $35 and upwards a share. A charge of the falsity of these statements, with intention to defraud, was made.

There were 37 counts in the indictment. Each count charged a scheme to defraud, and in the execution thereof a letter was sent through the United States mails. There is also a charge of conspiracy to violate section 37 of the United States Criminal Code (Comp. St. § 10201). This count was withdrawn from the jury's consideration by the trial judge.

Some of the defendants who planned this scheme to defraud gave testimony in behalf of the government. By their testimony it was established that Benjamin Crager, after meeting Samuel Safir in December, 1921, became associated with him and Rosenblatt and Sideman as partners, under the name of the Crager System, Inc., with offices in New York City. Their business was the selling of stock by reloading it in the manner described heretofore. By solicitation they secured representation of corporations which desired to sell or dispose of unpurchased capital stock. They organized a new corporation for each proposition which they undertook, but they used the same salesmen in attempting to dispose of the stock. They inaugurated a vigorous selling campaign in disposing of the stock, and easily and quickly shifted from one corporation to the other, when one did not readily sell.

The Crager System, Inc., had no regular clientèle. On March 10, 1922, it solicited the business of the Glass Casket Corporation, of Altoona, Pa. Negotiations were opened. The plaintiff in error Dorn at this time had the contract referred to for the sale of 19,000 shares of stock of the Glass Casket Corporation. He stated the proposition was too large for him to handle and assigned it to the Crager System, Inc., in return for the promise of $2 a share for each share of stock sold. He promised to assist the Crager System, Inc., in a sales campaign. In place of the assignment of the contract, a new contract was entered into between the defendant A. B. Heim & Co., a sales company formed by the Crager System, Inc., to handle the stock of the Glass Casket Corporation. Dorn and Rosenblatt went to Altoona and arranged for the making and signing of the new contract. Up to that time the Glass Casket Corporation had tried unsuccessfully to dispose of its unsold stock at $10 per share. Dorn agreed to sell it at $15, and the Crager System, Inc., was to sell it at $20. Of this $20, the Glass Casket Corporation received $8 a share. Three letters were written and agreed upon as form letters to be sent out for use by the salesmen in disposing of the stock. A letter of identification was also used by them. There were statements in the letters which were proven to be false, as recorded by the jury's verdict.

The convicted plaintiffs in error, with the exception of Dorn, were all salesmen, and were supplied with letters and cards, bearing the names of stockholders and the number of shares held by each. They made misrepresentations in furtherance of this fraudulent scheme, and attempted to or did dispose of stock to stockholders of record. They took releases, using the form of release by stockholders of his so-called allotment of shares. In truth and fact there was no allotment of shares to stockholders. The size of the allotment was governed largely by the representations or judgment, or both, of the salesman. They had order blanks, which the purchaser would sign, authorizing A. B. Heim & Co. to sell Glass Casket Corporation stock at a certain price, usually at $10 a share, over the

purchaser price of $20 per share. Advisory board applications were also used. The salesman represented to the victims that a place on the advisory board could be had by the purchase of more stock, and that such an office carried with it a salary. A "jumbo" contract blank, stating the price of the stock to old subscribers as $20 a share and the price to others at $22.50, was supplied and used.

One of the defendants, who had charge of the salesmen, testified that the salesmen knew practically nothing of the Glass Casket Corporation, and therefore had no information upon which to make the representations they did. Each salesman received $4 a share for his services, $8 was paid to the Glass Casket Corporation, $2 to Dorn, and $3 to the Crager System, Inc., and the overhead was estimated at $3. Letters were sent to stockholders, which were false in their statements of fact, and were designed to create the impression that there was a strong demand for the Glass Casket Corporation stock. A card was also sent by the United System and Lester Armstrong of Chicago, subsidiaries of the Crager System, Inc., offering to buy the stock. Dorn & Co. made similar offers. No stock was ever purchased by either of these firms upon offers of stockholders to sell.

In addition to the misrepresentations referred to, it was stated by the salesmen that they would resell the stock for the purchaser at an increased price later, if so desired, and also that they would buy the stock which the stockholders then owned, and assurances given that a certain per cent. would be made on their investment; that the Glass Casket Corporation stock had increased in value, and that the corporation was working producing caskets, and that application for foreign patents had been made; that large orders were on hand, and they were putting up additional factories and warehouses to take care of the business; that two casket companies had offered $3,000,000 and $13,000,000, respectively, for the Glass Casket Corporation. These statements were false. That there were misrepresentations made, and the scheme a fraudulent one, cannot be seriously questioned. The jury has found accordingly.

[1] We think it was clearly established that the plaintiffs in error were connected by sufficient evidence with the charge of the indictment to justify the jury's finding. Plaintiff in error Dorn, from what has already been said, was clearly connected with the commission of the crime. He was one of the originators of the scheme in selling the stock. He helped to carry on the campaign, profited by the division of the spoils, and worked with the Crager System, Inc., in its nefarious scheme. He played an important and considerable part in the execution of the scheme.

[2] There is but one error assigned by this plaintiff in error which we think requires consideration. Exhibit 13, received in evidence, was a "bi-card" sent out for the purpose of giving stockholders of the Glass Casket Corporation the impression that there was a strong demand for the stock. It was sent as a postal card or letter, mailed to the stockholder, using the name of J. E. Dorn & Co., and stated that it would purchase the stock of the Glass Casket Corporation. This card was prepared by an employee of the Crager System, Inc. He stated that: "Whenever we sent out a proposition, these bi-cards were sent out, either by J. E. Dorn & Co. or Lester Armstrong, of Chicago, and Mr. Dorn would always be notified that bi-cards were going out on this or any other proposition." It was testified that J. E. Dorn & Co. never purchased a share of the stock. There was ample evidence showing that such cards were sent out in Dorn's name, with his permission, to other stockholders. We perceive no harmful error in the admission of this particular card, received as Exhibit 13, and read to the jury, even though it was not particularly shown to have been called to Dorn's attention.

The Crager System, Inc., had many salesmen, and plaintiffs in error were used in selling the various stocks it offered in the manner described. After receiving the equipment referred to, they started out on this campaign of selling. Most of the salesmen knew the general character of the securities the Crager System, Inc., was accustomed to selling. They knew the allotment representation was false, for the size of the allotment was left to their judgment. They made the size fit the purse of the stockholder to buy stock. The representation that nonstockholders were paying $22.50 a share, while the present stockholders were paying $20 a share, was false. They knew the "jumbo" contracts were misrepresentations. They likewise knew, or the jury might well have believed that they knew, that the representations which were made as referred to had no basis in fact. Their conduct in selling is more than culpable, and the only fair inference from the evidence is that the salesmen knew that they were selling stock through misrepresentation. They were not shown to have been innocent of the falsity of these statements.

[3] In each count of the indictment a letter was mailed, pursuant to the scheme and as a measure of its execution. The plaintiffs in er-

ror, who were salesmen, were in a scheme of concerted action to dispose of stock at a profit to them individually, making statements which they did not know were true, or which they knew were untrue, and were all engaged in a common purpose. Letters sent in the mails in furtherance of this concerted action sufficiently established the charge of the indictment. Chambers v. United States (C. C. A.) 237 F. 513; Silkworth v. United States (C. C. A.) 10 F.(2d) 711; Shea v. United States (C. C. A.) 251 F. 440.

[4] As we have pointed out, it was not essential to establish that the plaintiffs in error in this class were parties to the formation of the scheme, if they knowingly joined it. If they did so, they are as responsible as if they had joined it at the time of its formation. Schwartzberg v. United States (C. C. A.) 241 F. 348; Wilson v. United States (C. C. A.) 190 F. 427. It is no answer to say, as argued by some of the plaintiffs in error, that the scheme to defraud was so transparent that persons possessing an average mind and intelligence could not possibly have been deceived. The stock was not worth the price paid for it, and the money was secured without value. U. S. v. New South Farm, 241 U. S. 64, 36 S. Ct. 505, 60 L. Ed. 890, Ann. Cas. 1917C, 455.

[5, 6] But it is argued that there was a want of identification of some of the plaintiffs in error who were salesmen. Identity is a question of fact. Horner v. U. S., 143 U. S. 207, 12 S. Ct. 407, 36 L. Ed. 126; Albury v. Dyson (C. C. A.) 285 F. 738. Plaintiff in error Kaplan was indicted under the name of George J. Kearns. No question was raised during the trial as to that fact. He was identified as the Kearns who made representations and sold stock by at least one victim. He was identified by the sales manager of the Crager System, Inc., as one of the salesmen, and he stands convicted under the name of Kearns, although in point of fact his true name is George J. Kaplan. No objection was made, nor did he attempt to correct the error, below. We can perceive of no legal difficulty in upholding the conviction, even though he has been named erroneously as Kearns. Since he was identified as one connected with the fraudulent scheme at the times the mails were used, and has been held in arrest under the mandate of the indictment for the commission of this crime, and has been convicted, he cannot now escape punishment.

[7] He does assign as error the admission of evidence, the statement of Benjamin Crager, that the Crager System, Inc., "used the same salesmen in all these propositions. They are the defendants sitting over here. They were and various more." "These propositions" were referred to indefinitely as an oil proposition, tractor stock, and a bond issue. The admission of this evidence is said to be erroneous, because it connected the salesmen with the commission of other crimes. But no prejudicial error was committed in admitting such evidence. The Crager System, Inc., was on trial, as were other individual defendants. It was competent to show, as proving the intent, that it, and the defendants associated with it, committed similar offenses. Farmer v. United States (C. C. A.) 223 F. 903; Means v. United States (C. C. A.) 6 F.(2d) 975.

[8] Each of the plaintiffs in error were identified and proven to have told some of the falsehoods which furthered the scheme to work out the sale of the stock. There was enough as against each of them to require that the evidence be submitted to the jury for its determination as to whether each was connected with the fraudulent scheme in furtherance of which the mails were used, and the jury's finding is binding upon us.

Plaintiff in error Block was identified by certain of his victims as making false representations and actually selling some of the stock. Cohen also was identified as one of the salesmen making false representations, telling the story of the allotment of the stock to persons who were stockholders. Palter, Wallach, Shaw, and Goulson were all similarly identified, and were proven to have made misrepresentations—some or all of the misrepresentations to which reference has been made. They were sufficiently connected with the fraudulent scheme.

[9] Error is assigned advancing the claim that there is a variance between the indictment and the proof. The defendant in error was not obliged to prove every misrepresentation alleged in the indictment. A sufficient number of them were established, and, if the proof established, as it did, the common scheme intended for using the mails, that is sufficient. United States v. Young, 232 U. S. 161, 34 S. Ct. 303, 58 L. Ed. 548; Nash v. United States, 229 U. S. 379, 33 S. Ct. 780, 57 L. Ed. 1232; Silkworth v. United States (C. C. A.) 10 F.(2d) 711.

[10] The testimony of the victims of the scheme, stating that unidentified salesmen approached them and talked with them, was properly received as showing the practical application of the method of carrying out the scheme. If the plaintiffs in error were not

shown to have used the method, they must have known, from the letters which they were using and the method of carrying out the scheme, that the mails would be used in furtherance of the execution of the fraudulent scheme. Silkworth v. United States, supra.

Judgments of conviction affirmed.