## COWL v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
October 7, 1929.

No. 8294.

I. J. Dunn, of Omaha, Neb. (Ziegler & Dunn and G. W. Becker, all of Omaha, Neb., on the brief), for appellant.

George A. Keyser, Asst. U. S. Atty., of Omaha, Neb. (James C. Kinsler, U. S. Atty., of Omaha, Neb., Philip M. Aitken, Asst. U. S. Atty., of Lincoln, Neb., and Ambrose C. Epperson, Asst. U. S. Atty., of Omaha, Neb., on the brief), for the United States.

Before KENYON and VAN VALKEN-BURGH, Circuit Judges, and OTIS, District Judge.

KENYON, Circuit Judge. Appellant with others was indicted for violation of sections 215 and 37 of the Criminal Code (18 USCA §§ 338, 88). He is the only defendant prosecuting an appeal, and will herein be designated as defendant.

The indictment contains fourteen counts. Counts 1 to 13, inclusive, were based on the alleged violation of section 215 of the Criminal Code (Title 18, section 338, USCA) by use of the mails for the purpose of carrying out a scheme to defraud in the sale of town lots. The alleged scheme is set forth in count 1. The fourteenth count charged defendant with entering into a conspiracy with divers other persons to commit an offense against the United States by devising a scheme (as set forth in count 1) to defraud, and within intent to execute the same by use of the United States mails. The court instructed a verdict of not guilty as to counts 1, 3, and 10. The jury returned a verdict of guilty on the other counts. Defendant was sentenced to one year and a day in the penitentiary, and fined $5,000 on the fourteenth count, and one year and a day on each of the other counts, all sentences to run concurrently. There are 72 assignments of error. Reliance is placed on some 23. There is no bill of exceptions. It is doubtful if any questions are before us, except those arising on the record proper. The court signed a certificate, which seems to have been regarded by it as in the nature of a bill of exceptions, and which was likewise so regarded by the government in its objections filed thereto. In the court's order overruling the objections of appellee thereto it is designated as a proposed bill of exceptions. It is something of an anomalous instrument, unknown to the practice or rules of this court, and, while it is doubtful if it is sufficient as a bill of exceptions, we have decided to consider the questions raised therein, except when based

on the evidence. That is in no way before us. This eliminates a number of assignments of error. It is unnecessary to take up seriatim the numerous assignments of error. They are practically all based on the claimed inadequacy of the indictment, error in overruling motion for instructed verdict, refusal to give certain instructions, and the situation of the case as affected by the instructions of the court.

Defendant filed a special demurrer to the indictment, alleging it to be defective in certain particulars. The special demurrer is the same as to all counts, and the parts thereof here argued are subdivisions (b) and (c) of each division, which are as follows:

"(b) That said Count 1 of said information does not allege the value of said lot to be donated to said plaintiff, and fails to allege that the same was worthless or of no value.

"(c) That said Count 1 fails to allege that said larger lots were valueless and fails to allege the value of said larger lots."

Each assignment of error thereto is as follows:

"13. Because of error committed by the Court in overruling the Special Demurrer filed by the defendant, Harry H. Cowl, to the indictment, and to the insufficiency thereof, and to each of the counts therein as set forth in said Special Demurrer, to-wit:

"In overruling Paragraph (b) of said Special Demurrer to Count 1 of said indictment, that said Count 1 of said Indictment does not allege the value of said lot to be donated, and fails to allege that the same was worthless or of no value.

"In overruling Paragraph (c) of said Special Demurrer to said Count 1 of the Indictment, that said Count failed to allege that said larger lots were valueless, and failed to allege the value of said larger lots."

The other provisions of the demurrer relate to the allegations as to the mailing of letters and are not here questioned.

Appellant in argument goes far beyond the matters raised by the special demurrer and assigned as error, and assails many features of the indictment. In considering the special demurrer, we shall confine ourselves within bounds indicated by the assignments of error. We set forth the important parts of the indictment at this juncture. After the formal opening reciting the parties charged, it asserts:

"All of the above named persons hereinafter in this indictment called defendants, did devise a scheme or artifice to defraud and for obtaining money and other valuable things from a certain class of persons then resident in Nebraska, Iowa and various other states of the United States of America, hereinafter in this indictment called victims, by means of false, fraudulent and fictitious pretenses and representations, that is to say, the said defendants would, by the means hereinafter described, induce the said victims to give, send and pay their money and other valuable things to the said defendants under the name of the U. S. Suburban Home Developers, Inc. (a corporation, the business and affairs of which were then and there, and at the subsequent times hereinafter mentioned, under the management and control of the said defendants or some of them), for the purchase by deed or contract of lots in what was called by the defendants Lakoma or Lacoma Heights, which was located in and near the village of Ralston, Douglas County, Nebraska, upon pretense and representations to be made in the name of the said corporation to the said victims by the said defendants, either directly or through agents or representatives of the said corporation, by means of oral statements and of divers' letters and printed prospectus or advertisements, to the effect that these defendants, or some of them, had formed a corporation for the purpose of developing three certain tracts of land which the said corporation had purchased in and near the village of Ralston, in Douglas County, Nebraska. * * * The development as the said defendants represented to the said victims was that Lakoma or Lacoma Heights was an established community with paved roads running through the property, street lights, electricity, telephone lines, that city water mains and sewers were laid to the property, that the company planned to build many residences on the said property, and that it was but a few blocks from Dundee, an exclusive residential section of the city of Omaha, Douglas County, Nebraska."

The indictment then describes, with additional averments as to the scheme, the manner in which the so-called victims were to be obtained, which, in brief, was to have agents at county fairs and other places, who were to "state that a lot would be given away free to some one of the persons who would place their name, address and other information upon small cards furnished by the defendants, or the agents or representatives of the said corporation, which would then be returned to the defendants, or the agents or representatives of the said corporation, and that from the cards so returned certain ones would be chosen as a recipient of a free lot, and that the persons so designated would be

notified, either orally or by letter, that they had been selected to receive a lot free upon the payment of actual expense, such as abstract, record, deeds, notary fees, etc., which amount of actual expense was represented to be $59.00, and that said lot would be represented as of the value of approximately $250.00, that the intended victims would then be shown the lot which was located in a low place in the addition and was about 25 by 100 feet, some few lots that were shown being 25 by 132 feet, that the victims would then be shown other lots in the addition which were 50 feet by 120 feet and more favorably located, and that the value of which the defendants or agents or representatives of the corporation would represent to be of the value of $300.00 to $750.00, and the victim would be told by the defendants or the agents or representatives of the said corporation that upon the payment of the $59.00 actual expense a credit of $250.00 would be allowed the victim upon the purchase price of one of the larger lots, and the defendants personally, or through the agents or representatives of the said corporation would represent that they had good and lawful right and authority to give, sell, or otherwise dispose of, either by deed or contract, each and every lot in the said Lakoma or Lacoma Heights, which the said defendants would offer to sell, give or otherwise dispose of to one of the said victims."

The government, to establish the crime charged, was not compelled to allege or prove that the lots were worthless. The extent of damage to the purchasers was not an element of the alleged crime. If the scheme existed, as charged, to sell lots by false and fraudulent representations, then there was a scheme to defraud, even if the purchaser did not lose in the transaction. The use of the mails in a scheme to defraud was the offense, regardless of the damage, if any, to the purchaser of the lots.

In Wilson v. United States (C. C. A.) 190 F. 427, 433, the court said: "But whatever may be the rule in civil cases, we are satisfied that damage is not made an essential element of the federal statutory offense of using the mails to execute a scheme or artifice to defraud. We are of the opinion that a scheme or artifice is established by proof of false and fraudulent misrepresentations by which a person's right of open and fair dealing is invaded; that having shown that the defendants used false and fraudulent means to induce persons to part with their property and to purchase stock which was not of the value represented, the government was not required to go further and prove either the existence or extent of damage to the purchasers." United States v. Hersey (D. C.) 288 F. 852.

Further, in that part of count 1 which alleges the various representations made to induce the purchase of lots to be false, it is stated, "that the lots as shown to the victims as being donated to them upon the payment of $59.00 actual cost were not worth the sum of $250.00, nor were the larger lots of the value of $300.00 to $750.00." This answers the contentions raised by the special demurrer.

We refer to some other objections suggested as to the indictment. It is urged that certain charges of false representation in the indictment, i. e., that the corporation had authority to sell each and every lot, as to the value of the lots, that the $59 was more than the cost of the abstract, as to deeds and incidental expenses in connection with the transfer of title to the intended victim, were a part of the recital as to the method of carrying out the scheme to defraud, and were not statements of any part of the scheme itself; that therefore the jury was permitted to convict appellant on matters charged only in the recital. There is a distinction between a scheme to defraud and the means by which it is to be carried out. Sunderland v. United States (C. C. A.) 19 F.(2d) 202. The distinction has been recognized particularly where a charge of duplicity arises under an indictment. While the indictment here under consideration is cumbersome, lacking in clarity, intertwining statements of the scheme to defraud with methods employed, we do not think it should be held defective on the ground of duplicity, granting that such question was preserved in the record. It sets forth but one general scheme to defraud. The indictment charges that by means "hereinafter described" the victims were to be induced to give up their money. Some of the matters which counsel urge as merely recitals are in fact tied up to and a part of the scheme to defraud, though not set forth where the attempt is made to describe the same.

The rule as to the requisites of an indictment for using the mails to defraud has often been stated. It is that, if the offense be charged with such clearness as to show a violation of the statute, and sufficient particularity, not only to enable the accused to understand the crime with which he is charged and to prepare properly his defense thereto, but to plead any judgment in bar of a further prosecution therefor, it is sufficient. United States v. Behrman, 258 U. S. 280, 42

S. Ct. 303, 66 L. Ed. 619; Horn v. United States (C. C. A.) 182 F. 721. That the elements of the crime may be loosely stated will not invalidate the indictment. Dunbar v. United States, 156 U. S. 185, 15 S. Ct. 325, 39 L. Ed. 390. In Brady v. United States (C. C. A.) 24 F.(2d) 399, 402, this court said: "While the formation of a scheme or artifice to defraud is an essential element of the offense defined in section 215 (18 USCA § 338) supra, the gist of the offense is the use of the mails for the purpose of executing or attempting to execute such scheme, and it is therefore sufficient to charge the scheme with such particularity as will enable the accused to know what is intended and to apprise him of what he will be required to meet on the trial." Of course, there cannot be a conviction on a different scheme than that charged in the indictment, but it is not necessary that all the alleged false representations be proved as part of the scheme. A scheme to defraud is necessarily made up of numerous elements. No particular element need be proved if sufficient is shown to constitute the scheme to defraud. Sasser et al. v. United States (C. C. A.) 29 F.(2d) 76. In United States v. New South Farm and Home Co., 241 U. S. 64, 71, 36 S. Ct. 505, 508, 60 L. Ed. 890, the court said, "And when the pretenses or representations or promises which execute the deception and fraud are false, they become the scheme or artifice which the statute denounces." The essential elements of the crime must be alleged with reasonable particularity, but the scheme to defraud need not be set forth with such particularity as if it were the gist of the offense. Mathews v. United States (C. C. A.) 15 F.(2d) 139; Chew v. United States (C. C. A.) 9 F.(2d) 348; Gould v. United States (C. C. A.) 209 F. 730; Brady v. United States (C. C. A.) 24 F.(2d) 399.

The indictment is subject to the charge of loose pleading, in that it does not state the elements of the scheme to defraud consecutively and logically. Various elements thereof are scattered throughout the indictment. Taking the indictment as a whole, putting the various allegations of false representations together, and eliminating the interspersing of recitals, the scheme to defraud was to represent falsely to the victims that Lakoma Heights was an established community, that it had paved roads running through the property, street lights, electricity, telephone lines; that city water mains and sewers were laid to the property, and that the company (U. S. Suburban Home Developers, Inc., under which title defendant operated) planned to build many residences on the property; that it was but a few blocks from Dundee, an exclusive residential section of the city of Omaha, Nebraska; that the U. S. Suburban Home Developers, Inc., would give away free to some person who had furnished his name upon cards supplied by defendant a lot upon the payment of actual expenses, represented to be $59; that the victim would be shown the lot, together with other lots more desirable and more valuable, and would then be told that upon payment of the $59 a credit of $250 would be allowed upon one of the larger lots; and that the corporation had the right and authority to dispose of every lot in Lakoma Heights. All of these matters we think are alleged as parts of the scheme to defraud.

It is urged by defendant that there could be no scheme to defraud where lots were offered to prospective purchasers upon actual view thereof, and that, where persons viewed the property, any statements of defendant as to the value of the lots could not constitute a scheme to defraud. Of course, if it appeared from the indictment that all the representations claimed to be false and necessary to constitute the scheme to defraud would have been apparent from an examination of the premises, and that the scheme contemplated that no lots should be sold without an inspection of the premises by the buyer, the argument of defendant's counsel would be sound. But that is not the situation here presented. Even if the purchasers did view the lots, the falsity of all the alleged representations embodied in the scheme to defraud or a substantial number thereof would not be disclosed. We do not know, of course, what the evidence may have revealed as to this. Certainly a view of the lots would shed no light upon the alleged representations as to the intention of the company to make future improvements thereon.

Appellant stresses the point that the indictment did not charge that the scheme to defraud covered any plan to secure money by selling the same lot to more than one person; that this at most was a mere recital of method to execute the scheme. Be that as it may, the statement could be regarded as mere surplusage, and the indictment would be sufficient without it. Mathews v. United States (C. C. A.) 15 F.(2d) 139; Brady v. United States (C. C. A.) 24 F.(2d) 397.

The real objection to this indictment seems to be as to defects in the manner in which the alleged crime is set forth. That is a defect in form. Section 556, Title 18, U. S. Code Anno., provides: "No indictment found and presented by a grand jury in any district

or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant." While the indictment could well have been clearer in its statement of the scheme to defraud, we think it is not fatally defective. The arrangement of the subject-matter thereof could not have prejudiced defendant. United States v. New South Farm and Home Co., 241 U. S. 64, 36 S. Ct. 505, 60 L. Ed. 890; Gardner v. United States (C. C. A.) 230 F. 575; Mathews v. United States (C. C. A.) 15 F.(2d) 139; Turner v. United States, 32 F.(2d) 126 (opinion this court, filed March 25, 1929).

We turn to the question of the propriety of the instructions of the court, confining ourselves to their relationship to the indictment and not to the evidence.

Defendant urges that the matters remaining after certain of the alleged false representations were withdrawn from the consideration of the jury by the court were not sufficient to constitute a scheme to defraud.

The court took from the jury as matters not shown to be false the question of the sewers being laid to the property, water mains likewise, and that it was but a few blocks from Dundee. Other alleged fraudulent representations remained in the indictment sufficient, if proved, to constitute a scheme to defraud.

Counsel for defendant argues that under the court's instructions the jury could have found appellant guilty of having devised a scheme to defraud solely upon the representations as to the value of lots. We do not so understand the record. The court stated to the jury:

"It is charged in the indictment that it was part of the scheme of the defendants to make misrepresentations concerning the values of the lots in Lakoma Heights which were offered for sale. In this regard you are instructed that the evidence discloses that the value of the lots was largely a matter of opinion upon which experts who have testified before us have differed widely. The defendants cannot be deemed guilty of making a false representation or of any intent to defraud on account of an expression of opinion as to the value of the lots they were selling, especially where, as is shown by the evidence in this case, the prospective purchasers were themselves upon the ground and were themselves afforded opportunity to form an estimate and opinion as to value. In this regard, however, you are instructed that it is

not an element of the offense here charged against these defendants that they sought to defraud the purchasers by exacting an excessive price for the lots. The gist of the scheme, as I have stated, is charged to be the obtaining of money from the 'victims,' so-called, by means of false, fraudulent and fictitious representations. Under the statute upon which this indictment is based the inquiry for you is not whether persons were induced to pay an excessive price, but whether they were induced to enter into the transaction and part with their money by means of, and as a result of, a scheme to use such false, fraudulent and fictitious pretenses and representations to that end as are charged in the indictment."

Under the court's instructions the jury could not have convicted defendant solely because of alleged false representations as to the value of the lots coupled with the use of the mails. The court told the jury that the expression of an opinion as to the value of the lots where the prospective purchasers went upon the ground and were afforded an opportunity to form an opinion as to value, could not be deemed a false representation with intent to defraud. The representations, if any, as to value of lots, were only a part of the alleged scheme to defraud.

The court, after stating to the jury that certain alleged false representations had not been proved, said:

"However, it is not necessary for the government to prove in this case that the scheme of the defendants in connection with the sale of lots included the making of all of the alleged false representations set forth in the indictment. It is sufficient in this regard for the government to sustain its allegations that the defendants did devise a scheme or artifice to defraud and for obtaining money from the persons called victims by means of any of the alleged false, fraudulent and fictitious pretenses and representations set forth in the indictment, and a representation concerning what the company planned to do may also be found to be a false representation under the statute and the indictment if it is shown beyond a reasonable doubt that the company did not in good faith plan to do as represented and defendants knew it and made the representation to deceive and defraud and obtain money by means thereof."

Question is raised as to this instruction, on the ground that appellant could have been convicted thereunder if the government proved any of the alleged false representations made in the indictment, and that the court should have excepted those which the

jury were instructed not to consider. It is to be noted that the court referred to alleged *false representations.* The matters it had withdrawn from the jury were held not to be false representations. Consequently there could have been no conviction based thereon. [12] The court said that it appeared in evidence as to a great many of the lots in Lakoma Heights that more than one contract was made for the sale of certain lots at different times to different persons. After stating the law as to when the Suburban Company would have the right to repossess itself of property sold under contract, the court said:

"On the other hand, if the purchaser was not in default of his payments then, in such case, the company would not have the right, in the absence of some other special agreement with the purchaser, to re-offer the property for sale to another person; and if such was the condition of the contract, and there was no such special agreement with the purchaser, any representation or pretense knowingly and wilfully made by the company or its officers that it had a right to re-sell the property to another purchaser ignorant of the facts would be a misrepresentation and within the purview of the indictment."

We think this instruction was justified, under the allegation in the indictment that one of the false representations was that the agents or representatives of the corporation had authority to dispose of each and every lot in Lakoma Heights.

We are satisfied that the special demurrer to the indictment should have been overruled, that the motion to instruct a verdict for defendant and the requests for certain instructions were properly denied, and that any errors in the trial did not result in substantial prejudice to defendant.

The judgment is affirmed.