## RUDE v. UNITED STATES.

### HELLER v. SAME.
### Nos. 1084, 1085.

Circuit Court of Appeals, Tenth Circuit.
Jan. 9, 1935.

Philip Hornbein, of Denver, Colo. (Chas. Ginsberg and Chas. Rosenbaum, both of Denver, Colo., on the brief), for appellant Rude.

Cass M. Herrington, of Denver, Colo., for appellant Heller.

Thos. J. Morrissey, U. S. Atty., of Denver, Colo.

Before PHILLIPS and BRATTON, Circuit Judges, and POLLOCK, District Judge.

PHILLIPS, Circuit Judge.

Rude and Heller were tried, convicted, and sentenced for violations of section 215 of the Criminal Code, 18 USCA, § 338.[1]

The indictment contained four counts. The first count set out the general scheme,[2]

---

[1] 18 USCA, § 338, in part reads:
"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises * * * shall, for the purpose of executing such scheme or artifice or attempting so to do, place, or cause to be placed, any letter, postal card * * * in any post office * * * to be sent or delivered by the post office establishment of the United States * * * shall be fined not more than $1,000, or imprisoned not more than five years, or both."

[2] Count one charged that defendants maintained a place of business where they exhibited large quantities of cheap,

and the mailing of a postal card in furtherance of such scheme. Each of the other counts alleged by reference to count one the same general scheme, and the mailing of another postal card in furtherance thereof.

The defendants challenged the sufficiency of the indictment by demurrers and motions in arrest of judgment, and assign as error adverse rulings thereon.

While the formation of a scheme or artifice to defraud is an essential element of the offense under section 215, supra, the gist of the offense is the use of the mail for the purpose of executing or attempting to execute such scheme, and such scheme need not be pleaded with all the certainty as to time, place, and circumstances required in charging the use of the mails. Havener v. United States (C. C. A. 10) 49 F.(2d) 196, 198; Brady v. United States (C. C. A. 8) 24 F.(2d) 397; Cochran v. United States (C. C. A. 8) 41 F.(2d) 193; Mathews v. United States (C. C. A. 8) 15 F.(2d) 139; Chew v. United States (C. C.

manufactured ready-made and made-to-order cotton and wool shoddy suits, overcoats and pants, and samples from which suits, overcoats and pants could be fabricated; that by means of false advertising and post cards sent through the mail, defendants would solicit their intended victims to purchase said suits and overcoats, and that in order to induce such sales defendants falsely represented and promised as follows:

"That, for the purpose of helping unemployed tailors, the defendants, under the name of 'I. Rude the Little Tailor' were 'doing their bit' by donating without profit, part of the large tailoring plant owned by defendants, whereas, in truth and in fact, the defendants would not donate, without profit, a part of their said large tailoring shop.

"That the defendants had purchased a large quantity of new fine woolen cloths at greatly reduced prices, from which the persons to be defrauded could have a suit made to measure for the sum of Ten Dollars, and that said suit so made would be a regular twenty-five dollar suit value, and, in addition, the defendants would make for the persons to be defrauded a pair of pants to match the persons' to be defrauded old suits free; whereas, in truth and in fact, the defendants would not have on hand a large quantity of new fine woolen cloth to be used in making suits to be sold for Ten Dollars to said persons to be defrauded, and said suits so made by the defendants for the said persons to be defrauded would be made of cheap, cotton and wool shoddy material, and would not be worth twenty-five dollars, nor any more than Ten Dollars.

"That the defendants would represent that they had on hand, and for sale to the persons to be defrauded, a large stock of unclaimed suits, which had been returned to the defendants by the United States Post Office Department, were Twenty-five Dollar values, and that the persons who had ordered said suits and failed to claim them had made deposits on said unclaimed suits ranging from Five Dollars to Fifteen Dollars, which deposits had been forfeited, and that the persons to be defrauded could purchase said twenty-five dollar value suits for five dollars; whereas, in truth and in fact, the defendants would not have on hand for sale to the persons to be defrauded a large stock of unclaimed suits which had been returned to the defendants by the United States Post Office Department, on which deposits from Five Dollars to Fifteen Dollars had been forfeited, and would not have had returned to them by the United States Post Office Department a large number of unclaimed suits on which any sum of money had been paid or forfeited; but would have on hand a large quantity of suits of cheap, shoddy, cotton and wool, theretofore purchased or made up by the defendants for sale generally, which the defendants would offer for sale for five dollars to the persons to be defrauded.

"That it was further a part of said scheme that, for the purpose of inducing the persons to be defrauded to call and visit at the defendants' place of business for the purpose of having a suit made by the defendants, the defendants would mail to the persons to be defrauded, through the United States Post Office Department, samples of fine woolen cloth suitable for the manufacture of fine woolen suits and pants and offer to make a suit of said material for ten dollars; and that, when the persons to be defrauded would call at the defendants' place of business for the purpose of purchasing or having a suit made from cloth as per the sample so received through the mail, the defendants would not have on hand at their place of business to be made into ten dollar suits with an additional pair of pants free, cloth from which samples had been cut, or similar cloths; but that the defendants would attempt to sell for Ten Dollars, to the person so induced to call at the defendants' place of business, suits to be made of cheap, cotton shoddy wool material, or ready made suits of said cheap cotton shoddy wool material."

A. 8) 9 F.(2d) 348; Gould v. United States (C. C. A. 8) 209 F. 730; Cowl v. United States (C. C. A. 8) 35 F.(2d) 794.

■ But the scheme or artifice to defraud must be set forth with sufficient particularity to apprise the accused of the nature of the accusation and to enable him to prepare his defense. United States v. Hess, 124 U. S. 483, 486, 8 S. Ct. 571, 31 L. Ed. 516.

■ The substance of the charge with respect to the scheme is that defendants would mail to persons to be defrauded, to induce them to come to defendants' store, postal cards with samples of fine woolen cloth attached, falsely representing that suits of such material could be purchased for $10, and that unclaimed suits of the value of $25 upon which deposits of from five to fifteen dollars had been forfeited could be purchased for five dollars; and that when such persons would call for the purpose of buying the advertised suits, defendants would attempt to sell them other suits made or to be made of "cheap, cotton and wool shoddy material" for five or ten dollars.

Although the indictment is loosely drawn, we are of the opinion that it charged a scheme to palm off to customers enticed into defendants' store by false advertising, cheap, shoddy suits as the advertised suits, and that the scheme was alleged with sufficient particularity to apprise defendants of what they would be required to meet at the trial.

■ It would be a scheme to defraud notwithstanding the merchandise to be offered might approximate in value the price to be charged. It is common knowledge nothing is more alluring than the expectation of getting what is commonly called a bargain, and a scheme which holds out that one will receive greater value than he pays for, appeals to the avarice of many. A scheme whereby customers are to be induced to part with their money by leading them to believe they are receiving something different from, superior to, and worth more than what is actually being sold, is an objectionable one within the intendment of section 215, supra, although the articles to be sold will approximate in commercial value the price to be asked and received. Durland v. United States, 161 U. S. 306, 313, 16 S. Ct. 508, 40 L. Ed. 709; United States v. Stever, 222 U. S. 167, 32 S. Ct. 51, 56 L. Ed. 145; Harris v. Rosenberger (C. C. A. 8) 145 F. 449, 453, 13 L. R. A. (N. S.) 762.

■ That the prospective customers were to have an opportunity to inspect the suits to be sold before purchasing them, would not prevent the scheme from being fraudulent. Inspection would not disclose that a suit was not an unclaimed suit, nor the real value thereof. Those were facts within the peculiar knowledge of the defendants. Cowl v. United States (C. C. A. 8) 35 F.(2d) 794.

The defendants by proper motion challenged the sufficiency of the evidence to support the verdicts of guilty, and present that question for review here.

Nelson, a post office inspector, went to defendants' place of business and asked to be shown their five dollar unclaimed suits; a clerk attempted to sell him a $10.00 suit, then a $12.50 or $15 suit. Nelson insisted upon being shown an unclaimed five dollar suit as advertised, and was told by the clerk that he had nothing to do with the advertising, and they did not have any unclaimed suits. Upon further insistence, the clerk found four suits he represented were unclaimed, and Nelson purchased one for five dollars. The suit was introduced in evidence. Other evidence discloses that it was a stock suit.

Lawrence, a former employee of defendants, testified that when a customer would come to defendants' store and ask for an unclaimed suit, he would show him suits priced at $12, $14 and $15; that if the customer wanted a five dollar suit he would show him suits at that price, but which were not unclaimed; that the prices put on the suits indicated the minimum at which they should be sold, but the price to be asked was determined by judging from the customer's appearance what he might be induced to pay. He further testified that on one occasion a customer requested a suit made of cloth similar to the sample attached to a postal card; that he could not find such a suit on the rack, so he took the customer's measure, cut a piece off the sample, and attached it to the order blank; that the order could not be filled, and a few days later he sold the customer a higher priced suit. He also testified that he never represented a five dollar suit as unclaimed and had no instructions to do so.

McCraken, also a former employee, testified that when a customer asked for a suit made of cloth like that on the postal card, he was not able to purchase it for $10 but was charged $15 or $18, or whatever larger amount could be obtained; and that if a

customer asked for a five dollar unclaimed suit, he showed him a five dollar suit and told him it was unclaimed, but that he made such representation without instructions from defendants and solely of his own volition. He also testified that he sold unclaimed suits for five dollars.

It is not necessary to prove all the false representations alleged in an indictment based on section 215, supra, but it is necessary to prove those essential to lay a sufficient foundation for a finding by a jury that a scheme in substance was devised. Havener v. United States (C. C. A. 10) 49 F.(2d) 196, 199; Goldstein v. United States (C. C. A. 8) 63 F.(2d) 609, 612; Cowl v. United States (C. C. A. 8) 35 F.(2d) 794; Mathews v. United States (C. C. A. 8) 15 F.(2d) 139; Kaplan v. United States (C. C. A. 2) 18 F.(2d) 939.

Many of the representations were proved to be false, but the evidence was insufficient to lay a foundation for the jury to find defendants devised a scheme to palm off as the advertised suits, others of lower grade and of less value to customers who were enticed into their store. One discharged salesman sold both unclaimed suits and stock suits for five dollars, representing that they were unclaimed, but such representation was made without instructions or authority from the defendants, and on his own initiative. The salesman who sold the five dollar stock suit to Nelson told him they had no unclaimed suits, and attempted to sell him a higher priced suit. Upon further insistence, the salesman finally sold him a five dollar stock suit as an unclaimed one.

Instead of proving a scheme to sell cheap, shoddy suits as those advertised, this evidence along with the other testimony, established a scheme to attract customers into the store by false advertising, with a view to selling them merchandise that had not been advertised, at whatever price they could get. Such a scheme does not fall within the provisions of section 215, supra, nor the charge in the indictment.

During the course of the trial, defendants offered in evidence a package containing orders, with samples of cloth attached, for tailor-made suits, which orders had been filled. Such cloth was like the samples sent through the mail. Suits purchased on such orders were sold for $10. The evidence was excluded. The two discharged salesmen, who were witnesses for the government, testified that suits made of cloth similar to the samples of cloth sent through the mail, were not sold for $10, but were sold at prices ranging from $15 to $18. The proffered evidence tended to disprove the charge that the representation on the postal card that suits made of material similar to an attached sample would be sold for $10, was false, and it tended to impeach the testimony of the two discharged salesmen. Its exclusion constituted prejudicial error.

Reversed and remanded with instructions to grant defendants a new trial.